**Carol L. OWINGS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–449.

United States Court of Veterans Appeals.

Argued April 28, 1995.

Decided May 24, 1995.

Alfred Stanbury, Minneapolis, MN, for the appellant.

Michael A. Leonard, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and R. Randall Campbell, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for the appellee.

Before FARLEY, MANKIN, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Carol L. Owings, appeals a March 21, 1994, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to dependency and indemnity compensation (DIC) benefits as the surviving spouse of veteran Clarence R. Nadeau (the veteran). For the reasons that follow, the Court will affirm the decision of the Board.

## I. Background

The veteran served on active duty in the U.S. Army for eighteen years, receiving an honorable discharge in May 1974. Record (R.) at 8. He died of a heart attack in March 1979. R. at 11. In 1979, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) awarded entitlement to DIC benefits to the appellant as a surviving spouse, based on a finding that a proximate cause of the veteran's death was his service-connected arteriosclerotic heart disease. R. at 19. The appellant remarried in March 1980, and VA terminated her DIC benefits, although her minor children apparently continued to receive benefits. R. at 23, 31; see R. at 34.

In March 1991, a Minnesota court issued a divorce decree terminating the appellant's marriage. R. at 51. She notified a VARO in July 1991 that she was now divorced and wished to begin receiving DIC benefits. R. at 37. In August 1991, the RO notified her that her DIC benefits could not be "reinstated" because due to a change in the law, the "remarriage of a surviving spouse of a veteran is now a permanent bar against receiving benefits based on that veteran's service." R. at 40. The appellant filed a Notice of Disagreement (NOD) in February 1992 (R. at 48) and a Form 1–9 (Substantive Appeal to the BVA) in June 1992 (R. at 67). In her NOD, the appellant argued: "When I went on DIC it was understood that ... if I remarried [DIC benefits] would not be paid ... but would begin again if I was not [married]. Not renewing [the DIC benefits] seems [like] a breach of contract." R. at 48. She submitted a letter from one attorney who stated that he had "met with Carol Owings for a consultation regarding a divorce in the fall of 1988" (R. at 76) and a letter from another attorney stating that he had "assisted [the appellant's second husband] in his [d]issolution matter" and that the husband had "commenced this legal action prior to November 1, 1990" (R. at 94).

In an April 1993 decision, the BVA remanded the appellant's claim to the RO for it to contact the appellant and request that she "provide copies of all legal documents filed in connection with the proceedings that resulted in the March 1991 divorce ... including a dated copy of the petition for divorce", and to review any such documents. R. at 116. The RO sent the appellant a May 1993 letter requesting the documents specified by the Board. R. at 120. A July 1993 Statement of the Case issued by the RO indicated that she had not responded to the RO's May 1993 letter. R. at 126.

In the March 21, 1994, BVA decision here on appeal, the Board, after finding that the claim was well grounded, denied entitlement to DIC because "the evidence does not establish that the legal proceedings to terminate the appellant's [second marriage] began prior to November 1, 1990." R. at 3. The BVA noted that "[u]nder the former provisions of 38 C.F.R. § 3.55, remarriage of a surviving spouse of a veteran did not bar receipt of VA benefits to such surviving spouse if her remarriage had been terminated by death or divorce"; however, the Board concluded, 1990 and 1992 statutes "provided that remarriage of a surviving spouse was a permanent bar against receiving benefits based on the veteran's service" unless a legal proceeding to terminate an existing marriage was commenced before November 1, 1990, by the veteran's widow or widower. R. at 4. The Board determined that the copy of the divorce decree submitted by the appellant did "not indicate when the proceedings to terminate the marriage commenced" and concluded that such proceedings "would normally commence with the filing of a petition for divorce." *Ibid.* The Board found that the appellant was not entitled to reinstated DIC benefits because the evidence indicated that it was the appellant's second husband, not the appellant, who had filed for the divorce; because there was no documentary evidence that the legal proceedings had commenced prior to November 1, 1990; and because she had not responded to the RO's request for a "dated copy of the petition for divorce". R. at 4–5. A timely appeal to this Court followed. On appeal, the appellant contends basically that she is the beneficiary of a "social contract" between herself and VA and that her DIC benefits pursuant to that contract were only temporarily suspended in 1980.

## II. Analysis

### A. *Generally Applicable Law*

When a veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC. *See* 38 U.S.C. § 1310; 38 C.F.R. § 3.5(a) (1994). A veteran's death is due to a service-connected disability when "such disability was either the principal or a contributory cause of death." *See* 38 C.F.R. § 3.312 (1994). A claim for DIC is treated as a new claim, regardless of the status of adjudications concerning service-connected-disability claims brought by the veteran before his death. *See* 38 C.F.R. § 20.1106 (1994); *Zevalkink v. Brown*, 6 Vet.App. 483, 491 (1994). Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.159 (1994); *Littke v. Derwinski*, 1 Vet.App. 90, 91–92 (1990).

The statutes and regulations applying to a surviving spouse who remarries and then later divorces and reapplies for DIC have been modified several times in recent years. Item 1 below is the statute regarding remarriage of the widow of a veteran, 38 U.S.C. § 103(d), in effect before November 1990. Items 2 through 4 are amendments to 38 U.S.C. § 103(d) that became effective in 1990, 1991, and 1992, respectively. Item 5 is the statutory definition of "surviving spouse". Item 6 is the current VA regulation interpreting 38 U.S.C. § 103(d).

**Item 1.** Pre–November 1, 1990, 38 U.S.C. § 103(d)(2):

(d)(2) The remarriage of the [widow] of a veteran shall not bar the furnishing of benefits to [her as the widow] of the veteran if the remarriage has been terminated by death or has been dissolved by a court with basic authority to render divorce decrees unless the [Secretary] determines that the divorce was secured through fraud by the widow or collusion.

38 U.S.C. § 103 (1989).

**Item 2.** Omnibus Budget Reconciliation Act of 1990 (OBRA), Pub.L. No. 101–508, § 8004, 104 Stat. 1388–343 (Nov. 5, 1990) (INELIGIBILITY OF REMARRIED SURVIVING SPOUSES OR MARRIED CHILDREN FOR REINSTATEMENT OF BENEFITS ELIGIBILITY UPON BECOMING SINGLE) [hereinafter 1990 Amendment]:

(a) IN GENERAL.—Section 103 of title 38, United States Code, is amended—

(1) in subsection (d) ...

(B) by striking out paragraph[ ] (2)....

(b) EFFECTIVE DATE.—The amendments made by subsection (a) shall apply with respect to claims filed after October 31, 1990, and shall not operate to reduce or terminate benefits to any individual whose benefits were predicated on section 103(d)(2) ... before the effective date of those amendments.

38 U.S.C. § 103 note.

**Item 3.** Veterans' Benefits Programs Improvement Act of 1991, Pub.L. No. 102–86, § 502, 105 Stat. 414, 424 (Aug. 14, 1991) (SAVINGS PROVISION FOR ELIMINATION OF BENEFITS FOR CERTAIN REMARRIED SPOUSES) [hereinafter 1991 Savings Provision]:

The amendments made by section 8004 of [OBRA] shall not apply with respect to any individual who on October 31, 1990, was a surviving spouse or child within the meaning of title 38, United States Code, unless after that date that individual (1) marries, or (2) in the case of a surviving spouse, begins to live with another person while holding himself or herself out openly to the public as that person's spouse.

38 U.S.C. § 103 note.

**Item 4.** Veterans' Benefits Act of 1992, Pub.L. No. 102–568, § 103, 106 Stat. 4320, 4322 (Oct. 29, 1992) (EXCEPTION TO OPERATION OF OBRA PROVISION) [hereinafter 1992 Exception]:

(a) EXCEPTION.—The amendments made by section 8004 of the [OBRA] shall not apply to any case in which a legal proceeding to terminate an existing marital relationship was commenced before November 1, 1990, by an individual described in subsection (b) if that proceeding directly resulted in the termination of such marriage.

(b) COVERED INDIVIDUALS.—An individual referred to in subsection (a) is an individual who, but for the marital relationship referred to in subsection (a), would be considered to be the surviving spouse of a veteran.

38 U.S.C. § 103 note.

**Item 5.** The term "surviving spouse" is defined in 38 U.S.C. § 101(3), and this definition was not modified by the 1990 Amendment, the 1991 Savings Provision, or the 1992 Exception:

The term "surviving spouse" means ... a person of the opposite sex who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death ... and who has not remarried ....

38 U.S.C. § 101(3).

**Item 6.** Current regulation, 38 C.F.R. § 3.55 (Reinstatement of benefits eligibility based upon terminated marital relationships):

(a) *Surviving spouse.* ...

(2) On or after January 1, 1971, remarriage of a surviving spouse terminated prior to November 1, 1990, or terminated by legal proceedings commenced prior to November 1, 1990, shall not bar the furnishing of benefits to such surviving spouse provided that the marriage:

(i) Has been terminated by death, or

(ii) Has been dissolved by a court with basic authority to render divorce decrees unless [VA] determines that the divorce was secured through fraud by the surviving spouse or by collusion.

38 C.F.R. § 3.55(a)(2) (1994). The Court dealt with the companion statutory provision (38 U.S.C. § 103(e)), and its complicated evolution, in *Giancaterino v. Brown,* 7 Vet.App. 555, (1995).

### B. Application of Law to Facts

The appellant lost her entitlement to DIC benefits for the veteran's service-connected death when she remarried in 1980. She divorced in 1991, and applied for DIC benefits that same year. However, VA informed her that, due to a law change, surviving spouses who remarried and later divorced were no longer eligible for DIC benefits. The appellant makes three general arguments on the merits: (1) The 1991 Savings Provision or (2) the 1992 Exception applies in her case; and, (3) even if neither the 1991 Savings Provision or the 1992 Exception applies, the 1990 Amendment should not bar her entitlement to DIC benefits.

■ *1. The 1991 Savings Provision.* The 1991 Savings Provision is expressly limited to those who were "surviving spouses"

on October 31, 1990. As noted in part II.A. above, the definition of "surviving spouse" in 38 U.S.C. § 101(3) applies to a veteran's spouse "who has not remarried". However, the implementing regulation provides that under certain conditions, remarriage will not be a bar to receipt of DIC benefits. *See* 38 C.F.R. § 3.55. The phrase "has not remarried" in 38 U.S.C. § 101(3) would seem to conflict with the pre–1990 provision in 38 C.F.R. § 3.55 that a spouse who had remarried and subsequently divorced could receive DIC. Also, a literal interpretation of section 101(3) would mean that the 1991 Savings Provision (which is entitled "Savings Provision for Elimination of Benefits for Certain *Remarried Spouses*" (emphasis added)) would not apply to any spouse who had ever remarried, even if that spouse was divorced before November 1, 1990.

The legislative history of the 1991 Savings Provision indicates that the purpose of the legislation was "to provide reinstatement eligibility for all applicable VA benefits for surviving spouses or children whose disqualifying marriages [had] ended prior to November 1, 1990...." *See* EXPLANATORY STATEMENT ON H.R. 1047, Pub.L. No. 86, 102d Cong., 1st Sess. (1991), *reprinted in* 1991 U.S.C.C.A.N. 181, 191 (emphasis added). The legislative history of the 1991 Savings Provision would tend to indicate that Congress was aware of and approved of the interpretation of 38 U.S.C. § 101(3) contained in 38 C.F.R. § 3.55. However, the Court does not reach the questions whether 38 C.F.R. § 3.55 is broader than the statutory definition of "surviving spouse" in 38 U.S.C. § 101(3) or whether the 1991 Savings Provision can apply to "remarried" spouses because, as explained in part II.B.2., below, "legal proceedings" to obtain the appellant's divorce were not commenced "prior to November 1, 1990", as required for "surviving spouse" status within the meaning of 38 C.F.R. § 3.55. Thus, even if § 3.55 is broader than section 101(3), it still does not allow reinstatement of this appellant's DIC benefits. The Court thus holds that the 1991 Savings Provision, as reflected in section 103(d)(2) and § 3.55, does not provide a basis for DIC entitlement for the appellant.

**2. *The 1992 Exception.*** The appellant argues that the 1992 Exception applies to her because she "in reality commenced the [divorce] action when she visited with a lawyer in Wisconsin in 1988." Br. at 6. The Secretary argues that the evidence does not support the appellant's contention that a "legal proceeding" was commenced by November 1, 1990, as required by the 1992 Exception, and that the appellant's consultation with an attorney in 1988 was not such commencement as a matter of law. Br. at 12.

Interpretations of statutory terms such as "legal proceeding" and "commenced" are questions of law. *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). Therefore, the Board's interpretation in the instant case that, pursuant to the 1992 Exception, a "legal proceeding to terminate an existing marital relationship" would normally be the date of filing of a petition for divorce (R. at 4) is reviewed de novo. The Court holds that the meaning of "commence[ment]" of a "legal proceeding" pursuant to the 1992 Exception should be determined by the underlying law controlling the legal proceeding. *Cf.* 38 U.S.C. § 103(c); 38 C.F.R. § 3.1(j) (1994); *Sanders v. Brown,* 6 Vet.App. 17, 19 (1993) (validity of marriage is determined by law of place where parties resided at time of marriage or where they resided when right to benefits accrued).

The Minnesota state statute that deals with institution of divorce proceedings states: "A proceeding for dissolution or legal separation may be brought by either or both spouses and shall be commenced by personal service of the summons and petition venued in the county where either spouse resides." MINN.STAT.ANN. § 518.09 (West 1995). (Under relevant Minnesota law, the terms "divorce" and "dissolution" or "dissolution of marriage" have the same meaning. *See* MINN.STAT.ANN. § 518.002 (West 1995).) When personal service cannot be made, the court may order service by alternate means. MINN.STAT.ANN. 518.11 (West 1995). The Court holds that, in the instant case, the legal proceeding was commenced when the divorce petition was served, or when the court ordered alternate means of service and such service was "complete" pursuant to

Minnesota law, not, as the appellant argues, when she consulted a lawyer in 1988.

The appellant did not submit any evidence that service of the summons and petition occurred before November 1, 1990. The appellant did state: "The petition was accepted for filing although unaccompanied by a summons, and a final decree nevertheless issued *very shortly thereafter."* Br. at 6 (emphasis added). Although the BVA stated that the filing of the petition would "normally" be the date of commencement of a legal proceeding, VA did request that the appellant submit "all legal documents filed" in the divorce action and the appellant did not comply; thus, the Court concludes that the Board had a plausible basis in the record for its determination that no "legal proceeding" was commenced in the instant case before November 1, 1990.

A copy of the divorce petition could have been sought by VA from the public record. However, the appellant did not put VA on notice that the petition would indicate that a legal proceeding was commenced before November 1, 1990. Nor did the appellant respond to VA's request for her to submit copies of the "divorce petition" and "all legal documents filed in connection with the proceedings that resulted in the March 1991 divorce". R. at 116. The Secretary had no obligation under 38 U.S.C. § 5107(a) to do anything further, on the facts of this case, in fulfillment of the duty to assist.

The 1992 Exception provides that the "legal proceeding" must be "commenced" by an "individual who, but for the [remarriage], would be the surviving spouse of a veteran." The 1992 Exception thus seems to require that the DIC claimant be the party that commenced the legal proceeding. The Secretary argues that the appellant does not meet the requirements of the 1992 Exception because it was her second husband, rather than she, who filed for the 1991 divorce. The appellant argues that any requirement that the appellant must be the one to commence the proceeding would not be rationally related to the purpose of the statute and thus violates the equal protection component of the Due Process Clause. *See Saunders v. Brown,* 4 Vet.App. 320, 325 (1993) (citing *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693,

98 L.Ed. 884 (1954) for the proposition that the Equal Protection Clause is applied to the federal government through the Fifth Amendment's Due Process Clause); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975) ("This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment"). Because the Court has concluded that the BVA did not err in determining that the appellant did not put VA on notice that any legal proceeding in the divorce was initiated before November 1, 1990, the Court does not reach the difficult constitutional question otherwise posed.

**3. The 1990 Amendment.** The appellant argues that even if neither the 1991 Savings Provision nor the 1992 Exception applies to the appellant, the 1990 Amendment should not bar her receipt of DIC benefits.

**◼ a. Due process:** The appellant argues (Br. at 4) that the 1990 Amendment as applied in her case violates the Fifth Amendment because she had a property interest in DIC benefits and did not receive notice or an opportunity for a hearing before the 1990 Amendment was passed. *See* U.S. CONST. amend. V. The Secretary argues that the Court does not have jurisdiction to hear this constitutional claim because the appellant did not raise it to the BVA. Br. at 9. The Court has held that a constitutional claim that has not been raised at the RO or the BVA was not properly before the Court when that claim requires further factual development which should take place in the administrative process. *See Suttmann v. Brown,* 5 Vet. App. 127, 139 (1993) (citing *Branham v. Derwinski,* 1 Vet.App. 93, 94 (1990)); *Rosalinas v. Brown,* 5 Vet.App. 1, 2 (1993). However, further factual development is not necessary in the instant case.

The leading case of *Goldberg v. Kelly,* 397 U.S. 254, 261–63, 90 S.Ct. 1011, 1016–18, 25 L.Ed.2d 287 (1970), held that welfare benefits "are a matter of statutory entitlement for persons qualified to receive them" and thus "[r]elevant constitutional restraints apply". This Court has held that veterans' benefits are a property interest that is protected by

the Due Process Clause of the Fifth Amendment. *Thurber v. Brown,* 5 Vet.App. 119, 122 (1993) (citing *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976)). *Goldberg* was limited to the fact situation where "a State" *"terminates* public assistance" to "a particular recipient", and thus did not address the question whether an *applicant* for benefits has a protected property interest in the potential benefit. *Goldberg,* 397 U.S. at 255, 90 S.Ct. at 1014 (emphasis added). As this Court noted in *Thurber,* "the Supreme Court has not yet ruled on the extent to which applicants for, rather than recipients of, government benefits have property rights in their expectations", and the lower federal courts are split. *See Thurber,* 5 Vet.App. at 123 (citing *Lyng v. Payne,* 476 U.S. 926, 942, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921 (1986)). The appellant in the instant case does not argue that she has a property interest in an unproven claim. Rather, she argues that she has a property interest in DIC benefits because they were merely "suspended", not terminated, by her remarriage.

The instant case differs from both *Goldberg* and *Thurber,* however, because an act of Congress modifying eligibility for benefits is distinguishable from a situation where notice and an opportunity for a hearing may be required before an individual may be deprived of a benefit to which that individual has previously established an entitlement. As noted above, the *Goldberg* holding was expressly limited to the situation where a state "terminate[d] public assistance" to "a particular recipient". *Goldberg* does not hold that a property interest exists when the statute that created it has been amended and terminates that property interest. In cases decided after *Goldberg,* the Supreme Court has held that when a legislature passes a law that provides for entitlement to benefits and then later amends or revokes that law so that the underlying entitlement no longer exists, the former recipient of the benefits no longer has a property interest in the benefits. *See, e.g., Atkins v. Parker,* 472 U.S. 115, 129, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985) ("legislatively mandated substantive change in the scope of an entire program" did not implicate "the procedural fairness of individual eligibility determinations"); *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971) ("the analogy drawn in *Goldberg* between social welfare and 'property' ... cannot be stretched to impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits"). The Due Process Clause of the Fifth Amendment does not itself confer a property interest; there must be an independent source, such as a statute or regulation. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ *b. Non-constitutional duty to inform:* The appellant asserts that she would never have remarried if she had known that she might not be able to receive DIC benefits if she divorced in the future, and seems to argue that statutes and regulations, and her reliance on representations made by VA, thus require this Court to order the government to reinstate her benefits. Br. at 4. This argument fails for at least four reasons. First, this Court must interpret the law as it exists, and cannot "extend ... benefits out of sympathy for a particular [claimant]." *Kelly v. Derwinski,* 3 Vet.App. 171, 172 (1992). Second, even if an employee of VA had informed the appellant that she would be eligible for DIC upon any future divorce (and the Court notes that no evidence was submitted to support such a finding), VA would not be bound to grant benefits due to this administrative error. *See OPM v. Richmond,* 496 U.S. 414, 426, 110 S.Ct. 2465, 2472, 110 L.Ed.2d 387 (1990) ("judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized"); *McTighe v. Brown,* 7 Vet. App. 29, 30 (1994); *Lozano v. Derwinski,* 1 Vet.App. 184, 185–86 (1991); *cf. Bernier v. Brown,* 7 Vet.App. 434, 439 (1995) (payments of money from federal treasury are limited to those authorized by statute, and finding statutory authority to order payment to be made). The Secretary does have *discretionary* authority to grant equitable relief in cases of administrative error (38 U.S.C. § 503), but the Secretary has apparently not chosen to grant equitable relief in this case. *See Suttmann,* 5 Vet.App. at 138 (Court has

no jurisdiction to review Secretary's determinations in regard to 38 U.S.C. § 503); *see also Darrow v. Derwinski*, 2 Vet.App. 303, 306 (1992).

As to a specific duty for VA to notify the appellant of the 1990 Amendment, the regulation that interprets 38 U.S.C. § 103(d) provides that "no award of [DIC] shall be terminated, reduced[,] or otherwise adversely affected unless the beneficiary has been notified of such adverse action" and provided a period within which to submit evidence. 38 C.F.R. § 3.103(b)(2) (1994). By its terms, this regulation requires notice only for those "beneficiaries" who have an "award" of DIC benefits. The appellant argues that DIC recipients who remarry and lose their DIC benefit payments have "suspended" benefits rather than "terminated" benefits, and thus would have an "award" pursuant to 38 C.F.R. § 3.103(b)(2). However, the statute covering eligibility for DIC, 38 U.S.C. § 1310, provides for "entitling" the "surviving spouse" to DIC benefits. Therefore, when a claimant loses the status of a "surviving spouse", the claimant loses *entitlement* to DIC benefits. Furthermore, 38 U.S.C. § 101(14) defines "dependency and indemnity compensation" as "a monthly *payment* . . . ." (Emphasis added.) The Court holds that after her remarriage in 1980 the appellant did not have an "award" of DIC benefits; thus, no "award" existed after 1980 to be "terminated, reduced[,] or otherwise adversely affected" pursuant to 38 C.F.R. § 3.103(b)(2).

Third, even if there were a duty to inform eligible veterans and dependents of certain law changes under 38 U.S.C. § 7722(c) (the "Secretary shall distribute full information to eligible veterans and eligible dependents regarding all benefits and services to which they may be entitled under laws administered by the Department"), no such obligation arose on the facts of this case. The 1990 Amendment became effective upon its enactment in November 1990, and thus, even if VA had informed the appellant about the change in the law on its effective date, she would nevertheless have been barred from DIC benefits under the 1990 Amendment. Similarly, notification of the 1992 Exception on its effective date would not have aided

her, because the 1992 Exception applied retroactively. Therefore, given the effective dates of the 1990 Amendment and the 1992 Exception, the moment they became law they did not provide for "benefits and services to which [the claimant] may be entitled under laws administered by the Department", as referenced in section 7722(c).

Fourth, to interpret statutes and VA regulations as requiring that VA had a duty to inform remarried former DIC recipients that they would lose eligibility unless they divorced before November 1, 1990, would violate the strong public policy that supports the institution of marriage. *See* 55 C.J.S. *Marriage* § 1 (1948) ("the public policy is to foster and protect marriage, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation"); *cf.* 52 Am.Jur.2d *Marriage* § 3 (1970) (a "statute will not be construed to make a marriage void unless the legislative intent to such effect is clear and unequivocal").

For these reasons, the Court holds that VA regulations did not impose any duty in the instant case for VA to have provided notice and/or a hearing to the appellant.

■ *c. Benefits "predicated on section 103(d)(2)":* The appellant argues (Br. at 5) that the 1990 Amendment, by its express language, does not apply to those "whose benefits were predicated on section 103(d)(2)" (38 U.S.C. § 103 note) before the effective date of the 1990 Amendment, and that the appellant's benefits were so predicated because she was a former recipient of DIC. However, the phrase quoted by the appellant, when placed in context, does not support her reading. *See* Sutherland, Statutes and Statutory Construction, § 47.02 (5th ed. 1992) ("whole act" method of contextual statutory interpretation is "most realistic in view of the fact that a legislature passes judgment upon the act as an entity"). The 1990 Amendment stated: "The amendments made by subsection (a) shall apply with respect to claims filed after October 31, 1990, and shall not operate to reduce or terminate benefits to any individual whose benefits were predicated on section 103(d)(2) . . . before the effective date of those amendments."

The phrase "any individual whose benefits were predicated on section 103(d)(2) ... before the date of the amendments" clearly refers to those who were current recipients of DIC benefits on October 31, 1990, because of the use of the conjunctive "and", and because the terms "reduce" and "terminate", on their faces, contemplate current payments capable of being so reduced or terminated. In addition, the 1991 Savings Provision and the 1992 Exception clarified the meaning of the 1990 Amendment, and do not comport with the appellant's suggested reading of it.

### III.   Conclusion

Upon consideration of the record and the briefs of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C. §§ 1154(b), 7252, 5107(a), 5108, 7104(d)(1), 7105(c), and 7261, and the analysis in *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990).   The Court affirms the March 21, 1994, BVA decision.

AFFIRMED.