Citation Nr: 1710373 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 13-05 332 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUE

Entitlement to a rating in excess of 10 percent for a chronic lumbar sprain.


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

B. Whitelaw, Associate Counsel


INTRODUCTION

The Veteran had active duty for training (ACDUTRA) service in the Army National Guard from June 1989 to September 1989 and a period of active duty service in the U.S. Army from May 1990 to March 1996.

This matter comes to the Board of Veterans' Appeals (Board) on an appeal from a rating decision made in July 2010 denying entitlement to a rating of greater than 10 percent for a chronic lumbar sprain. This decision was made by the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas.

This case was previously before the Board in December 2014, at which time the Board denied entitlement to a rating in excess of 10 percent for the Veteran's chronic lumbar sprain, and dismissed his appeal regarding service connection for sciatica of the lower extremities. He appealed a portion of this decision to the U.S. Court of Appeals for Veterans Claims (Court). In December 2015, the Court issued its Order granting a joint motion for partial remand (JMPR), which vacated and remanded only the Board's December 2014 denial of the claim of entitlement to a rating in excess of 10 percent for the chronic lumbar sprain disability. In March 2016, the Board issued a remand in furtherance of the December 2015 Court Order. The Board is satisfied that there has been substantial compliance with the directives set out in its March 2016 remand. See Dyment v. West, 13 Vet. App. 141 (1999).

The Veteran and his wife testified before the undersigned Veterans Law Judge at a hearing held in Little Rock, Arkansas in February 2014. A transcript of the hearing has been associated with the claims file.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).





FINDINGS OF FACT

1. The Veteran's chronic lumbar sprain has not resulted in forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees.

2. The Veteran's chronic lumbar sprain has not resulted in the combined range of motion of the thoracolumbar spine to 120 degrees or less.

3. The Veteran's chronic lumbar sprain has not caused muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis.


CONCLUSION OF LAW

The criteria for a rating in excess of 10 percent for a chronic lumbar sprain have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.40, 4.45, 4.59, 4.7, 4.71a, Diagnostic Code 5299-5237 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

As an initial matter, the Board acknowledges the Veteran's service to his country and is sympathetic to the fact that he has medical conditions; however, the Board must apply the law as it exists. See Owings v. Brown, 8 Vet. App. 17, 23 (1995) (providing that the Board must apply the law as it exists and is not permitted to award benefits based on sympathy for a particular appellant).

The Board has reviewed all the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence where appropriate and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the current appeal.


I. Increased Rating - Legal Standard

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects the ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2016). 

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3 (2016). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016). Furthermore, when it is not possible to separate the effects of the service-connected disability from a nonservice-connected condition, such signs and symptoms must be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam).

Additionally, the evaluation of the same disability under several Diagnostic Codes, known as pyramiding, must be avoided. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

The Veteran was previously awarded service connection and assigned an initial disability rating for his low back sprain. An appeal of the initial rating is not before the Board; rather, the Veteran seeks an increased rating. On a claim for increased rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found; such separate disability ratings are known as staged ratings. 

In the July 2010 decision on appeal, the Veteran's 10 percent evaluation for his service-connected chronic lumbar sprain was continued. The Veteran's disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code (DC or Code) 5299-5237. Hyphenated Codes are used when a rating under one Code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27 (2016). The Veteran's specific disability is not listed in the Rating Schedule, and the RO assigned Diagnostic Code 5299 pursuant to 38 C.F.R. § 4.27, which provides that unlisted disabilities requiring rating by analogy will be coded by the numbers of the most closely related body part and "99." See 38 C.F.R. § 4.20 (2016). The RO determined that the most closely analogous Diagnostic Code was 5237 for lumbosacral strain.

The General Rating Formula for Diseases and Injuries of the Spine provides the following, in pertinent part: a 10 percent disability rating for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a. 

A 20 percent disability rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id. 

A 40 percent disability rating is assigned for forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. Id. 

A 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine, and a 100 percent disability rating is assigned for unfavorable ankylosis of the entire spine. Id. 

These ratings are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. Id.

Note (2) provides that, for VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. See also Plate V, 38 C.F.R. § 4.71a. Note (1) provides that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be rated separately under an appropriate diagnostic code. 

When evaluating musculoskeletal disabilities, VA may, in addition to applying schedular criteria, consider granting a higher rating in cases in which the claimant experiences additional functional loss due to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are considered in conjunction with the Diagnostic Codes predicated on limitation of motion. See Johnson v. Brown, 9 Vet. App. 7 (1996). The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. When 38 C.F.R. § 4.59 is raised by the claimant or reasonably raised by the record, even in non-arthritis contexts, the Board should address its applicability. Burton v. Shinseki, 25 Vet. App. 1, 5 (2011).

II. Increased Rating - Analysis

After a full review of the record, and as discussed below, the Board concludes that a rating in excess of 10 percent for a chronic lumbar sprain is not warranted. 

Beginning as early as December 2009, the Veteran reported that he had chronic low back pain that affected his sleep and prevented him from being able to do any heavy lifting. Although he reported that his pain prevented him from heavy lifting and had affected his employment, he reported that his pain was constant at that time without flare-ups. At the February 2014 hearing, he reiterated that he was in constant pain but related that he had been told by his treating physicians that surgery would not improve his symptoms. At his most recent VA examination in May 2016, the Veteran again reported daily back pain in addition to occasional spasms. He indicated that pain increased with standing and limited him to lifting up to 10 pounds, sitting no longer than an hour, and walking no more than 100 yards. The Veteran's wife has also reported that the Veteran's back pain worsens at times to the point where he is unable to get out of bed. She also testified that his back has locked up on him. 

The Board recognizes that lay observations regarding pain, numbness, spasms, and reduced lifting capacity can be competent and probative as to an individual claimant's current level of symptomatology. Layno v. Brown, 6 Vet. App. 465 (1994). Accordingly, the lay statements made by the Veteran and his wife are entitled to some degree of probative weight. 

However, the statements of the Veteran and his wife have to be considered in the context of the entire record. Here, the objective medical evidence in the file and the reports of symptomatology do not warrant a rating in excess of 10 percent for the Veteran's chronic lumbar sprain at any point during the current period under adjudication.

At the Veteran's December 2009 VA examination, he had forward flexion in his lumbar spine to 80 degrees and the combined range of motion in his thoracolumbar spine was found to be greater than 170 degrees. The VA examiner also reported that there were no additional limitations after three repetitions and that there was mild tenderness and spasm. No neurological or gait abnormalities were observed. 

The Veteran underwent several additional VA examinations during the course of the instant appeal. In November 2012, the Veteran reported lower back pain with occasional spasm, but he reportedly denied symptoms of sciatica or radicular pain. He also stated to this examiner that his pain decreased his ability to lift during a flare-up. Although he was reported to have pain throughout each motion, this examiner reported that the Veteran was able to flex his lumbar spine forward to 80 degrees, including after repetitive-use testing. The Veteran also was found to have a combined range of motion in his thoracolumbar spine of 200 degrees, both before and after repetitive-use testing. This November 2012 VA examiner also indicated that, after repetitive-use testing, the Veteran had less movement than normal and pain on movement. While this examiner did report the presence of guarding or muscle spasm of the thoracolumbar spine, he suggested that it did not result in an abnormal gait or spinal contour. After an extensive evaluation of the Veteran's neurological system, this VA examiner reported no abnormalities in the Veteran's muscle strength, muscle tone, reflexes, or sensation, and he affirmatively stated that the Veteran had no signs or symptoms of radiculopathy or any other neurologic abnormalities related to a thoracolumbar spine condition. Finally, this VA examiner reported that the Veteran did not have intervertebral disc syndrome.

The Veteran attended an additional VA examination in September 2015, at which he reported a gradual increase in his back pain and that, at that time, he treated his symptoms with physical therapy visits, a TENS unit, medication, and a cane. The Veteran indicated at that time that he experienced flare-ups of symptoms in his back with overuse and excessive lifting that would continue for several days. He also indicated that his back did not move as well as it had in the past and hurt more than it previously had. 

Upon examination, this VA clinician reported limitation in the forward flexion of the Veteran's thoracolumbar spine to 70 degrees and a combined range of motion in the thoracolumbar spine of 170 degrees. Notably, although this VA examiner reported that the Veteran had pain on examination, this physician stated that it did not result in or cause functional loss. The September 2015 VA examiner also indicated that there was no evidence of pain with weight bearing, that there was no additional loss of function or range of motion after three repetitions, and that the VA examiner was not able to say whether flare-ups or repeated use over time caused additional functional limitations due to pain, weakness, fatigability, or incoordination. Although the Veteran presented with signs of localized tenderness in his thoracolumbar spine at this September 2015 VA examination, this tenderness was not found to result in abnormal gait or spinal contour, and the VA examiner reported no signs of spasm or guarding in the Veteran's thoracolumbar spine. 

As was the case in the November 2012 VA examination report, the VA physician who examined the Veteran in September 2015 also reported no signs of any neurological abnormalities or signs of radicular symptoms, and also stated that the Veteran did not have intervertebral disc syndrome. This VA examiner ultimately commented that the "Veteran's back condition appear[ed] to be minimally worse than on his previous evaluation."

Finally, pursuant to the above-referenced JMPR, the Veteran attended an additional VA examination in May 2016. At this evaluation, the Veteran again reported daily pain in his lower back in addition to occasional spasm. He indicated that he experienced flare-ups of increased pain with prolonged standing and informed the VA examiner that his symptoms limited him to walking 100 yards, sitting for an hour, standing for 10 minutes, and lifting 10 pounds. Upon examination, the Veteran demonstrated signs of pain that caused functional loss in his forward flexion, extension, and bilateral flexion. The examiner reported that the Veteran had forward flexion to 70 degrees and a combined thoracolumbar range of motion of 190 degrees. 

This May 2016 VA examiner also reported that the Veteran did not have additional loss of function or range of motion after three repetitions, but indicated that he was not able to determine whether repeated use over time or flare-ups would result in pain, weakness, fatigability, or incoordination that would significantly limit the Veteran's functional ability. The VA examiner at this May 2016 evaluation also reported that although there was localized tenderness and muscle spasm in the Veteran's thoracolumbar spine, these abnormalities did not result in an abnormal gait or spinal contour. Relevant here, this May 2016 VA examiner echoed the prior VA examiners and reported that the Veteran failed to demonstrate any neurological abnormalities and that the Veteran did not have intervertebral disc syndrome.

Ultimately, the evidence of record does not approximate the criteria under DC 5237 for a rating of higher than 10 percent at any point during the period currently on appeal. There is no probative evidence that the Veteran's chronic lumbar sprain has limited forward flexion in his thoracolumbar spine to 60 degrees or less or that it has limited the combined range of motion in this area of his spine to 120 degrees or less. Likewise, there is no evidence that muscle spasm or guarding has been so severe as to cause an abnormal gait or spinal contour. As such, even when considered in the light most favorable to the Veteran, the limitation in the motion of his spine and the severity of any guarding or muscle spasm do not rise to the level of severity required for a rating of 20 percent or higher under DC 5237.

Pursuant to DeLuca, the Board has also considered whether weakness, pain, incoordination, or fatigability caused by repetitive use or flare-ups warrant a higher rating. However, there is no competent medical evidence appearing in the record to suggest that flare-ups in the Veteran's chronic lumbar sprain or repetitive use of his lumbosacral spine would cause the degree of functional limitation that would warrant a rating of 20 percent or higher. Likewise, there is no evidence of intervertebral disc syndrome to warrant a rating in excess of 10 percent pursuant to DC 5243, and there is no evidence of any associated objective neurological abnormality to warrant a compensable rating for any disability associated with Diagnostic Codes relating to the neurological system. Accordingly, the Board concludes that the Veteran's chronic lumbar sprain has been no higher than 10 percent disabling throughout the entire rating period on appeal. 

The Board has also considered whether referral for an extraschedular rating is warranted for the service-connected chronic lumbar sprain. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the Veteran's disability level and symptomatology, the Veteran's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is, therefore, adequate and no referral is required. Id. at 115.

Here, the schedular rating criteria used to rate the Veteran's service-connected chronic lumbar sprain reasonably describe and assess the Veteran's disability level and symptomatology. The Veteran's service-connected chronic lumbar sprain is manifested by symptoms of chronic pain, numbness, occasional spasm, and limited motion, which impact his ability to sit or stand for prolonged periods and occasionally prevent him from being able to get out of bed. These symptoms and their resulting effects are fully contemplated by the rating schedule, which provides disability ratings on the basis of musculoskeletal deformity and contemplate a wide variety of manifestations of functional loss. As the Veteran's disability picture for the entire appeal period is contemplated by the rating schedule, the assigned schedular evaluation is adequate. 

As the Veteran has only one service-connected disability, he has not alleged or indicated that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render schedular rating criteria inadequate. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). For these reasons, the Board finds that the schedular rating criteria are adequate to rate the Veteran's chronic lumbar sprain, and referral for consideration of an extraschedular evaluation is not warranted.

The Veteran has occasionally suggested that his chronic lumbar sprain renders him incapable of employment, and he specifically testified at the February 2014 hearing that an inability to stand caused him to leave his former occupation as a professional barber. The Board has taken the Veteran's contentions regarding occupational impact in to consideration in adjudicating his claim for an increased rating. 

In its consideration of this evidence, the Board notes that a total disability rating based on individual unemployability may be assigned, where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a) (2016). 

Here, however, the Veteran's only service-connected disability is rated as only 10 percent disabling, and thus entitlement under 38 C.F.R. § 4.16(a) cannot be granted. Where the schedular rating percentage requirements of 38 C.F.R. § 4.16(a) are not met, entitlement to a total disability rating may be nonetheless considered when a veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b). Here again, however, the Board's review of the claims file does not indicate that the Veteran's 10 percent disabling lumbar sprain renders him unemployable. Rather, the evidence of record fails to show that his low back disability renders him unable to secure and follow a substantially gainful occupation. For instance, although the May 2016 VA examiner indicated that the Veteran would not be able to engage in heavy lifting or prolonged walking or standing, neither the May 2016 VA examiner nor any of the other VA examiners reported that the Veteran's low back disability would prevent him from securing or following employment. Thus referral to the Director of Compensation Service for extraschedular consideration under 38 C.F.R. § 4.16(b) is also not warranted.

III. VA's Duties to Notify and Assist

When VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159(b). Here, the Veteran was provided with the required notice and information in a December 2009 letter prior to the initial adjudication of his claim. See Vasquez-Flores v. Shinseki, 580 F.3d 1270 (2009). There have been no contentions that this notice is deficient in any way. As such, the Board is convinced that VA has satisfied its duty to notify. 

VA also has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2014). The Board finds that VA has satisfied its duty to assist by acquiring service records as well as relevant records of private and VA treatment. These pertinent records have been associated with the Veteran's claims file and reviewed in consideration of the issue before the Board.

As described above, VA also attempted to satisfy its duty to assist by affording the Veteran a November 2012 VA examination. This examination was ultimately found to be inadequate. Specifically, the JMPR indicated that this examination failed to address the factors set out in DeLuca v. Brown, 8 Vet. App. 202 (1995) and Mitchell v. Shinseki, 25 Vet. App. 32 (2011) relating to loss of functional use due to pain or during flare-ups. Pursuant to the JMPR, the Veteran was scheduled for a May 2016 VA examination to further evaluate any possible additional functional limitations during a flare-up, caused by pain, or upon use. 

In a January 2017 informal hearing presentation, the Veteran's representative has suggested that this VA examination failed to discuss flare-ups in the Veteran's back pain. However, a review of the May 2016 VA examination report does uncover a finding that the evaluator was unable to say without mere speculation whether such flare-ups caused pain, weakness, fatigability or incoordination that would significantly limit the Veteran's functional ability. In addition, this examiner considered the lay evidence presented, reviewed the Veteran's claim file, took down the Veteran's history, laid factual foundations for the conclusions reached, and reached conclusions and offered opinions based on history and examination that are consistent with the record. As such, the Board finds that this examination is adequate pursuant to Deluca and Mitchell. See also D'Aries v. Peake, 22 Vet. App. 97, 104 (2008). 

The Board has also considered Correia v. McDonald, No. 13-3238, 2016 WL 3591858 (Vet. App. July 5, 2016) which holds that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. The Board finds that the VA examination reports of record contain sufficient findings in this regard, and further remand is not required. 

Range of motion measurements for the opposite joint are unnecessary as there is no joint opposite of the spine. Additionally, the May 2016 VA examiner addressed pain in weight bearing status and in repetitive-use testing. Although this May 2016 VA examination report does not contain separate findings in active and passive motion it indicates that the Veteran moved on his own free will, indicating that pain in active motion has been considered. It follows that an assessment of passive motion would yield the same result. If the Veteran was able to move his spine himself to a particular degree, the spine would be capable of the same movement by the examiner, and the results in active motion are applicable to passive motion.

Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159 (c)(4) (2014); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion).


ORDER

Entitlement to a rating in excess of 10 percent for a chronic lumbar sprain is denied.




____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs