John B. WELLS, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 95–128.

United States Court of Veterans Appeals.

Argued June 21, 1996.

Decided Aug. 7, 1996.

John B. Wells, pro se.

Adam K. Llewellyn, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, were on the brief, for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

FARLEY, Judge:

This is an appeal from a January 31, 1995, decision of the Board of Veterans' Appeals (BVA or Board) which denied the restoration of full VA home loan guaranty entitlement. At issue is whether VA, in failing to notify the appellant that it would accept a deed-in-lieu of foreclosure from the appellant's assignee, deprived the appellant of a property right without due process and without just compensation. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA.

## I. FACTUAL BACKGROUND

In September 1978, the appellant purchased a home with a loan which was guaranteed, in part, by VA. Record (R.) at 20–37. In doing so, the appellant used $17,500 of a possible $36,000 of his home loan guaranty entitlement. R. at 134.

In 1979, the appellant conveyed the property by way of a warranty deed to Roy Osborn and Shirley Stamper (the assignees). R. at 41. The record does not contain an agreement regarding the assumption of the mortgage. Further, while it appears that Roy Osborn may have been a veteran eligible for a VA home loan guaranty, neither he nor the appellant ever substituted Mr. Osborn's entitlement for that of the appellant. R. at 124.

The loan was first in default in December 1979. R. at 46. The notice of default, completed by the lender, contained only the names of the assignees. R. at 46. The default was cured in March 1981 (R at 71), but the loan was in default again in July 1981 (R. at 83). Again, the notice of default contained only the names of the assignees. R. at 83. The appellant was not notified of either default.

In October 1981, the lender notified VA, but not the appellant, of its intention to foreclose. R. at 78–79. Shortly thereafter, Roy Osborn and Shirley Stamper requested that, in lieu of foreclosure, they be permitted to turn over the deed to the property to the lender. R. at 81. In February 1982, VA expressly authorized the lender to accept the deed in lieu of foreclosure in full satisfaction of the guaranteed indebtedness. R. at 99. VA did not notify the appellant that it had authorized acceptance of a deed-in-lieu of foreclosure, although the appellant's name did appear on a number of documents pertaining to the conveyance of the deed. See R. at 95, 105, 109, 118, 120, 122. In June 1982, the property was conveyed by the lender to VA. R. at 109, 111. Satisfaction of the mortgage was recorded in September 1982. R. at 114. The lender filed a claim for its deficiency under the loan guaranty (R. at 118), and in February 1983, VA notified the lender that its claim was approved and that it would soon receive a check in the amount of $5,539.67. R. at 122. VA did not notify the appellant that it was paying this claim, or that VA would treat this as a "write-off." R. at 118, 120.

In 1989, the appellant requested a determination of his eligibility status for a home loan. See R. at 124–25. The appellant was advised for the first time that VA had accepted a deed-in-lieu of foreclosure with respect to his account. See ibid.; see also R. at 130. The appellant was furthered informed that his remaining loan guaranty entitlement was $18,500, or the amount of his full eligibility ($36,000) less the $17,500 entitlement used for his initial purchase. R. at 134. Full entitlement would not be restored under 38 U.S.C. § 1802(b) (currently codified at 38 U.S.C. § 3702(b)) because VA had suffered a loss in the amount of $5,539.67, the amount of the claim paid by VA to the lender under the guaranty. R. at 130, 132.

In December 1989, the appellant asserted in a letter that VA's failure to notify him of a foreclosure had denied him due process. R. at 137–38. In February 1990, VA advised the appellant that (1) he was not indebted to VA in the amount of $5,539.67; (2) repayment of $5,539.67 from any source would restore his full entitlement; and (3) there is no requirement that the original veteran-obligor be contacted if a deed-in-lieu of foreclosure is accepted in order to avoid foreclosure. R. at 140; see also. R. at 144. In November 1990, the appellant demanded that his full loan guaranty eligibility be immediately restored. R. at 150–51. After additional correspondence, the Cleveland, Ohio, regional office issued a Statement of the Case in January 1992. In August 1992, the appellant requested and was granted a hearing before the BVA, and again asserted that he had been denied due process. R. at 179–85, 188.

In January 1995, the BVA determined that restoration of the appellant's full loan guaranty entitlement could not be restored until the loss to VA is recovered. R. at 10. In its opinion, the BVA stated that "the unenforceability of collection of the debt, does not, in itself, serve to reinstate full entitlement to loan guaranty benefits ... [T]he Secretary's *loss* must be repaid in order for the appellant's loan eligibility to be restored, even if the *debt* has been eliminated." R. at 10–11. Further, while the Secretary may waive that requirement under 38 U.S.C. § 3702(b), "it is established policy of the VA ... that waiver will be appropriate only in unusual situations involving catastrophic loss to a veteran, such as natural disasters." R. at 11. The BVA did not address the appellant's constitutional arguments.

On appeal, the appellant argues that he had a property interest in both the restoration of his VA loan entitlement and his equitable right of redemption of the property. These interests are sufficiently within the scope of the due process clause, he argues, to have required the Secretary to provide adequate notice of the default or impending deed-in-lieu of foreclosure proceedings prior to extinguishing these interests. He further argues that VA's "constitutionally infirm" actions entitle him to compensation under the taking clause of the Fifth Amendment and under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Finally, the appellant argues that the Soldiers and Sailors' Civil Relief Act of 1940 barred the Secretary from bringing any action, including an administrative action, to accept a deed-in-lieu of foreclosure against the appellant while he was on active duty.

The Secretary argues that, while the appellant was not given notice before VA accepted the deed-in-lieu of foreclosure, no notice was required because the appellant did not have a cognizable property interest in his VA loan entitlement. According to the Secretary, the appellant "has merely used a government benefit in a manner that precludes him from using it again." Secretary's Brief (Br.) at 10. With respect to any equitable right of redemption, the Secretary argues that "the only interest Appellant retained relative to the [real] property was a contingent further liability to indemnify the VA should his assumption-transferee default." *Id.* at 11. This interest, argues the Secretary, is merely a unilateral expectation which is not protected by the due process clause. *Ibid.* The Secretary concludes, then, that he is constrained by the dictates of veterans benefits law, specifically 38 U.S.C. § 3702(b), which precludes him from restoring the appellant's full entitlement until the Secretary recovers his loss.

## II. VA HOME LOAN GUARANTY

VA guarantees loans made to eligible veterans by private lenders for, inter alia, the purchase of a dwelling to be owned and occupied by the veteran. 38 U.S.C. § 3710(a)(1). As to loans under $144,000, such as the one in this case, eligible veterans are entitled to a maximum VA loan guaranty of $36,000. 38 U.S.C. §§ 3703(a)(1)(A)(i)(III), (IV), and (a)(1)(B). A veteran who previously obtained a VA loan can use any remaining entitlement for a second purchase. In addition, entitlement used for the previous purchase may be restored

and reused if any of the following conditions are met:

(1)(A) The property which secured the loan has been disposed of by the veteran or has been destroyed by fire or other natural hazard; and

(B) the loan has been repaid in full, or the Secretary has been released from liability as to the loan, or if the Secretary has suffered a loss on such loan, the loss has been paid in full.

(2) A veteran-transferee has agreed to assume the outstanding balance on the loan and consented to the use of the veteran-transferee's entitlement, to the extent that the entitlement of the veteran-transferor had been used originally, in place of the veteran-transferor's for the guaranteed, insured, or direct loan, and the veteran-transferee otherwise meets the requirements of this chapter.

(3)(A) The loan has been repaid in full; and

(B) the loan for which the veteran seeks to use entitlement under this chapter is secured by the same property which secured the loan referred to in subparagraph (A) of this paragraph.

(4) In a case not covered by paragraph (1) or (2)—

(A) the loan has been repaid in full and, if the Secretary has suffered a loss on the loan, the loss has been repaid in full; or

(B) the Secretary has been released from liability as to the loan and, if the Secretary has suffered a loss on the loan, the loss has been paid in full.

38 U.S.C. § 3702(b). Further, the Secretary has the discretion to waive any of the foregoing provisions and to exclude from the computation of entitlement any amount of entitlement previously used by a veteran. *Ibid.*

■ In the instant case, the Secretary argues that paragraph (b)(1)(B) precludes restoration of the appellant's full loan guaranty entitlement until VA is reimbursed for any loss on a prior loan. The Secretary points out that restoration is precluded irrespective of whether the appellant may have any legal duty to repay the deficiency suffered by VA. So long as VA has suffered an unreimbursed loss, VA will not guaranty more than the unused portion of the appellant's loan guaranty entitlement.

The Secretary is correct that the term "loss" as used in paragraph (b)(1)(B) extends to cases such as this where VA cannot, or does not attempt to, recover any deficiency from the veteran. *See Dixon v. United States,* 68 F.3d 1253 (10th Cir.1995). In *Dixon,* two veterans who had defaulted on VA loans sought to enjoin collection of the debts owed by them to VA and to have their full loan entitlement reinstated. The Tenth Circuit held that VA could not recover against a veteran who had had the VA debt discharged in a bankruptcy proceeding, but there was still a "loss" suffered by VA that would reduce that veteran's entitlement by the amount of guaranty used for the previous purchase. *Id.* at 1257.

Were it not for the lack of notice to the appellant before the acceptance of the deed-in-lieu of foreclosure, the Court's inquiry would end here: under the *Dixon* analysis, the appellant would be "simply not eligible for the full amount of guaranty benefits until the loss incurred by the VA is repaid." 68 F.3d at 1257. *Dixon,* however, is distinguishable in that the appellant, unlike the veterans in *Dixon,* did not receive notice of the intent to foreclose and thus did not have an opportunity to cure any deficiency. While there is now a regulation requiring notice to the "original veteran-borrower" coincident with the notice of intention to foreclose, 38 C.F.R. § 36.4317(c) (1995), it was not.in effect at the time the lender gave notice of its intention to foreclose.

### III. DUE PROCESS AND JUST COMPENSATION

■ The fifth amendment to the United States Constitution prohibits the government from depriving "any person of life, liberty, or property without due process of law." The Supreme Court has consistently held that the due process clause requires that notice be given and some form of hearing be held before an individual is finally deprived of a property interest. *See, e.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982); *Mathews v. Eldridge,* 424 U.S. 319, 333, 96

S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The fifth amendment also prohibits the government from taking private property for "public use, without just compensation." Because we hold that the appellant did not have a property interest in his VA loan guaranty entitlement or an equitable right of redemption, we need not reach the issue of whether he was denied due process or just compensation.

### A. Property Interest in VA Loan Guaranty Entitlement

In 1970, the Supreme Court held for the first time that due process protections are applicable to the termination of government benefits. *Goldberg v. Kelly,* 397 U.S. 254, 261–63, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970). Such benefits "are a matter of statutory entitlement for persons qualified to receive them," and are the equivalent of property for due process purposes. Two years after its decision in *Goldberg,* the Supreme Court further explained that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate *claim of entitlement to it.*
>
> . . . .
>
> Property interests, of course are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2709.

This Court has recognized a property right in veterans' benefits in *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990), *aff'd,* 972 F.2d 331 (Fed.Cir.1992), and in *Thurber v. Brown,* 5 Vet.App. 119, 122 (1993). In *Fugere,* the appellant's benefits had been reduced when VA, without prior notice, decreased his disability rating for a service-connected hearing disorder. In *Thurber,* the appellant was an individual claiming entitlement to service connection for a spinal condition. This Court, noting that the Supreme Court has not yet ruled on the extent to which applicants for, rather than recipients of, government benefits have property rights in their expectations, cited several lower court cases which had accorded due process right to applicants. *See Id.* at 123 and citations therein.

In contrast, this Court found that an applicant who had filed a claim for the reinstatement of benefits after an act of Congress modified eligibility requirements did not have a property right which was entitled to due process protection. *Owings v. Brown,* 8 Vet. App. 17, 23 (1995), *aff'd,* 86 F.3d 1178 (Fed. Cir.1996) (table). In *Owings,* the appellant, recently divorced from her second husband, sought reinstatement of the dependency and indemnity compensation (DIC) benefits which she had received after the death of her veteran husband until her marriage to her second husband. Prior to filing her claim for reinstatement, the relevant law was amended to make remarriage a permanent bar against receiving DIC benefits. She argued that she had a property interest in the DIC benefits, and that the failure to provide notice or an opportunity for a hearing before the change in law was passed, violated due process. While not deciding the issue of whether the appellant's due process rights were violated, the Court, inter alia, rejected the argument that the appellant could possess a property right in DIC benefits where she had not "previously established an entitlement" to them.

In the instant case, it is clear that the appellant initially had a property interest in his original VA loan guaranty entitlement. Like the claimant in *Thurber,* the appellant had a legitimate claim to entitlement to the benefit in question. *See* 5 Vet.App. at 122–23; *see also Board of Regents,* 408 U.S. at 578, 92 S.Ct. at 2709–10. VA tacitly acknowledged as much when it extended an initial guaranty in 1978, and again in 1989 when it calculated his loan entitlement to be $18,500. The determinative issue here, however, is not whether the appellant had a property interest in his initial loan guaranty entitlement,

but whether he had a property interest in the restoration of his expended entitlement which was used for a previous loan. This inquiry requires a review of 38 U.S.C. § 3702(b). *See Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2709.

On its face, 38 U.S.C. § 3702(b) precludes restoration and reuse of a veteran's expended guaranty entitlement unless one of several preconditions are met. The only preconditions arguably relevant here are those set forth in paragraphs (1) and (2). Paragraph (1) permits restoration of previously used entitlement if the property has been disposed of by the veteran, and if "the loan has been repaid in full, or the Secretary has been released from liability as to the loan, or if the Secretary has suffered a loss on such loan, the loss has been paid in full." 38 U.S.C. § 3702(b)(1)(B). Paragraph (2) permits restoration of previously used entitlement where another veteran "has agreed to assume the outstanding balance on the loan and consented to the use of the veteran-transferee's entitlement."

The preconditions of § 3702(b)(1) have not been satisfied because the loss suffered by the Secretary has not been recouped. It is undisputed that the loan was not repaid and that the Secretary, rather than being released from liability, paid $5,539.67 to the lender under the terms of the guaranty. Under *Dixon,* this amount constitutes a "loss" to the Secretary, even if it is not ultimately recoverable from the appellant. As for paragraph (2), it may be inferred from the record that the responsibility for the outstanding balance on the loan was assumed by Mr. Osborn and Ms. Stamper (*see* R. at 95), but there is no evidence that Mr. Osborn ever consented to substitute his eligibility for that of the appellant. Further, the record affirmatively indicates, as conceded during oral argument, that the appellant did not take any steps to ensure that Mr. Osborn would substitute his eligibility for the appellant's. R. at 137. Having used his original loan guaranty entitlement, the most the appellant could have had at the time of sale (and at the time of the subsequent default) was a "unilateral expectation" that, at some future date, he would be able to have his full entitlement

restored. *See Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2709. Had his assignees not defaulted under the mortgage note, this future date would not have been before October 1, 2008—the date on which the loan was scheduled to have been paid off and he would have become eligible under paragraph (b)(1)(B) for the restoration of his full entitlement. Any expectation on the part of the appellant that his eligibility would be restored is even more "abstract" in light of his admitted failure to take steps to ensure that his assignee's entitlement was substituted for his. *See Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2709.

Thus, the appellant has not established that he had a claim of entitlement "grounded in the statute defining eligibility." *Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2709 (discussing *Goldberg* ). The appellant's claim in this respect is similar to that of the appellant in *Owings.* Both appellants are precluded, by the terms of the relevant statutory provisions, from qualifying for the benefit sought. The appellant's "unilateral expectation" of restoration of his expended entitlement at some future time is not a property right entitled to due process protection. *Ibid.*

### B. Property Right in the Equity of Redemption

Under the governing state law, a mortgagor has an absolute right to redeem property in order to prevent foreclosure sale. *See Hausman v. City of Dayton,* 73 Ohio St.3d 671, 653 N.E.2d 1190, 1194 (1995). The appellant asserts that he possessed a right to redeem because he remained the "mortgagor" even after the property was transferred to, and the responsibility for the loan secured by the property assumed by, Mr. Osborn and Ms. Stamper. According to the appellant, the designation of "mortgagor" does not pass to the individual assuming the mortgage, but this bald statement is not supported by citation to any relevant statutory or case authority and the Court could find none. The Court finds no basis in law, fact, or the record for concluding that the appellant retained the right to redeem after he sold the property to Mr. Osborn and Ms. Stamper and they assumed responsibility for the loan.

Nor is there any basis for concluding that such a right may be exercised by the original owner to prevent a subsequent owner from conveying title to the property to prevent foreclosure of that property.

It is important to distinguish between the rights and responsibilities which flow from three distinct entities: the deed to the underlying property, the mortgage or note, and the VA guaranty. In this case, the appellant, as the original purchaser, transferred ownership, i.e., the deed to the underlying property, to the new purchasers, Mr. Osborn and Ms. Stamper. In addition, it appears that the purchasers assumed responsibility for the mortgage payments (*see, e.g.,* R. at 95), thereby terminating the appellant's status as mortgagor and any rights and obligations derived from that status, including the equity of redemption. See, e.g., *Hembree v. Mid–America Federal Savings & Loan,* 64 Ohio App.3d 144, 580 N.E.2d 1103, 1111 (1989) ( "A vendee in a contract of sale acquires his vendor's equity of redemption and has the right to redeem the mortgaged premises"); *see also* 1 GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW (hereinafter "NELSON") § 7.2 (1994) ("a mortgagor who has conveyed away or otherwise lost all interest in the property cannot redeem"); 55 AM.JUR.2D *Mortgages* § 898 ("It is obvious that the mortgagor may lose his right [to redeem] by parting with all of his interest in the mortgaged property"). The assumption of rights and obligations under the mortgage note by Mr. Osborn and Ms. Stamper, of course, had no effect on the terms of the loan guaranty between the appellant and VA, and thus the appellant remained responsible for the consequences of any debt which was assumed by VA as a result of the guaranty. *Cf. Vail v. Derwinski,* 946 F.2d 589 (8th Cir.1991) ("VA's right to indemnity derives from a contract independent of the mortgage," i.e., the VA guaranty); *see also* 38 U.S.C. § 3713(b); 38 C.F.R. § 36.4323(e), (f).

The appellant has cited several cases in which courts outside of his jurisdiction have found that a transferor of property retains a property right in the equitable right of redemption. *Federal Deposit Insurance Corp. v. Morrison,* 747 F.2d 610 (11th Cir.1984); *United States v. Murdock,* 627 F.Supp. 272 (N.D.Ind.1985); *United States v. Whitney,* 602 F.Supp. 722 (W.D.N.Y.1985). However, *Morrison* is distinguishable in that the court made an express finding that the transferor retained rights and obligations *as a mortgagor. Morrison,* 747 F.2d at 612. *Whitney* and *Murdock,* if nothing else, demonstrate the need for precision. In each, the courts failed to distinguish the mortgage note from the guaranty, and thus appear to have held that the liability resulting from the guaranty somehow entitled the transferor to redeem the underlying property as if he remained liable under the mortgage. We cannot find a basis on which to hold that a right to redeem somehow springs from the appellant's obligations under the terms of the VA guaranty apart from the mortgage note, and therefore, to the extent that *Whitney* and *Murdock* hold otherwise, we must respectfully disagree.

In any event, all of the cases relied upon by the appellant for the proposition that he has a right to redeem are distinguishable in that each deals with the right to redeem in the context of a foreclosure proceeding. The appellant has not cited, and the Court is unable to find, any authority for the proposition that the seller of real property has a right to redeem that property prior to its conveyance by the subsequent owner to the mortgagee *in lieu of foreclosure.* Rather, it appears that in the deed-in-lieu of foreclosure scenario, the only right to redemption is that of the property owner because a "deed-in-lieu of foreclosure" is "[t]he procedure whereby a mortgagor/debtor reconveys his equity of redemption in the defaulted property to the mortgagee/creditee in consideration of the creditor's promise to forebear from suing on the debt or foreclosing the security." 3 RICHARD R. POWELL & PATRICK ROWAN, POWELL ON REAL PROPERTY § 469.1 (1992); *see also* 1 NELSON § 3.3. Thus, the right to redeem, which was transferred by the appellant with his interest in the underlying property, was subsequently exercised by Mr. Osborn and Ms. Stamper when they conveyed title in the property to VA in order to avoid foreclosure proceedings.

As neither the record, nor any authority cited by the appellant, compels the conclusion that the appellant retained a right to redeem after he transferred the deed to Mr. Osborn and Ms. Stamper, he cannot be said to have a property right in the common law equity of redemption.

## IV. SOLDIERS AND SAILORS CIVIL RELIEF ACT

The Soldiers and Sailors Civil Relief Act, codified at 50 U.S.C.A.App. § 501 et seq., precludes, inter alia, "the bringing of any action or proceeding in any court ... or ... agency of government ... against any person in military service." 50 U.S.C.A.App. § 525. Insofar as we have held that the appellant had no interest in redeeming the underlying property, the conveyance of the deed by the appellant's assignees to VA cannot be construed as an "action or proceeding ... against" the appellant. Thus, under the facts of this case, 50 U.S.C.A.App. § 525 did not preclude the Secretary from accepting a deed-in-lieu of foreclosure from the appellant's assignees while the appellant was on active military service.

## V. CAUSE OF ACTION FOR DAMAGES

The appellant argues that he has a federal cause of action and can recover money damages for the deprivation of his constitutional rights pursuant to *Bivens,* 403 U.S. at 388, 91 S.Ct. at 2000. However, even had the Court determined that VA violated a constitutional right of the appellant, he would not have a cognizable cause of action for money damages before this Court. In *Bivens,* the Supreme Court held that a petitioner could recover money damages against individual agents of a governmental agency for injuries incurred as a result of constitutional violations by those agents, but not against the United States or the agency itself. Further, a violation of the appellant's due process rights would entitle him only to nominal damages in the absence of proof of actual injury, and none has been offered. *Carey v. Piphus,* 435 U.S. 247, 265, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). Finally, this Court does not have the authority to award money damages. *See Masors v. Derwinski,* 2 Vet.App. 181 (1992).

## VI. CONCLUSION

Upon consideration of the record, the submissions of the parties, and oral argument, the January 31, 1995, decision of the BVA is AFFIRMED.