**Hersey ANDERSON, Appellant,**

v.

**Togo D. WEST, Jr. Secretary of Veterans Affairs, Appellee.**

No. 98–821.

United States Court of Appeals for Veterans Claims.

July 27, 1999.

As Amended Aug. 23, 1999.

James W. Stanley, Jr., was on the brief for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Mary Ann Flynn, Acting Deputy Assistant General Counsel; and Peter J. Meadows were on the pleadings for the appellee.

Before HOLDAWAY, STEINBERG, and GREENE, Judges.

STEINBERG, Judge:

The appellant, veteran Hersey Anderson, appeals through counsel a February 27, 1998, decision of the Board of Veterans' Appeals (BVA or Board) that, inter alia, denied as not well grounded a claim for Department of Veterans Affairs (VA) service connection for arthritis of the left hip as secondary to his service-connected left-knee disability. Record (R.) at 2. The appellant has filed a brief, and the Secretary has filed a motion for single-judge affirmance. For the reasons that follow, the Court will deny the Secretary's motion (because the case does not meet the criteria for single-judge disposition set forth in *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990)) but will affirm the BVA decision.

## I. Background

The veteran served in the U.S. Army from January 1951 to December 1952. R. at 11. His service medical records showed treatment for various problems related to his left knee (R. at 22, 27, 34–40, 45), but were silent as to any hip-related conditions (*see* R. at 13–57). In December 1954, a VA regional office (RO) awarded the veteran service connection for a left-knee condition characterized as traumatic arthritis of the left knee, and assigned a 10% rating, effective October 1954.

R. at 75. In the years following that award, VA physicians examined and/or treated the veteran for additional complaints related to his left knee, and he filed several increased-rating claims as to that condition. *See generally* R. at 77, 80–82, 91–95, 98, 100–04, 106–07. In July 1961, the VARO increased the rating for his service-connected left-knee disability to 30%. R. at 98. (That 30% rating continued, unchanged, at least as of the January 1997 Supplemental Statement of the Case (SSOC) issued in connection with the instant appeal (R. at 470).)

In January 1985, a VA physician diagnosed the veteran as having, inter alia, arthritis secondary to chondrocalcinosis. (Chondrocalcinosis is "the presence of calcium salts, especially calcium pyrophosphate, in the cartilaginous structures of one or more joints." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 321 (28th ed.1994).) The examiner noted "acute" problems with the veteran's "right knee, ankle, and wrist", but made no finding or comment as to either of the veteran's hips. R. at 131; *see* R. at 131–33. In April 1985, the RO awarded the veteran, inter alia, an evaluation of 30% for degenerative multiple-joint arthritis for purposes of VA non-service-connected pension benefits. R. at 137. From 1985 to 1995, the veteran was treated at VA medical facilities for multiple-joint arthritis. *See generally* R. at 139–59, 171–81, 189–99, 209–17, 221–30, 238–53, 259–343. Also during that time period, he filed several unsuccessful claims for, inter alia, service connection for multiple-joint arthritis and an increased rating above 30% for his service-connected left-knee condition. *See generally* R. at 160–67, 187, 201–07, 219, 232–36, 255–58. In September 1995, the RO denied as not well grounded a claim submitted by the veteran in November 1994 (R. at 236) for service connection for multiple-joint arthritis (R. at 345–48).

In December 1995, the veteran filed with the RO a statement asserting problems with his "entire left leg, from [his] hip to [his] foot"; he stated that he had been seen at a VA medical center on November 18, 1995, where "[t]hey took x-rays of my left knee". R. at 350. The veteran also stated: "The doctor ... said that my left hip had severe

arthritis in it which *I* feel is related to the problems with my knee." *Ibid.* (emphasis added). In March 1996, the RO advised the veteran that in order to submit a well-grounded claim for secondary service connection, he needed to do as follows: "[S]ubmit the following evidence: 1.[M]edical evidence that the condition exists; and 2. medical treatises suggesting a causal relationship between the two conditions; or 3. medical evidence from a medical professional asserting medical causation." R. at 366. The RO obtained additional medical records (R. at 368–403), including a November 18, 1995, VA medical record indicating that the veteran's chief complaint was that "for 3 days" he had had pain in his left knee "radiating up to" his left hip (R. at 372). The RO in May 1996 denied as not well grounded the left-hip secondary-service-connection claim. R. at 406–07. The veteran filed a Notice of Disagreement (NOD) in July 1996 (R. at 411), and in August 1996 the RO issued a Statement of the Case (SOC) (R. at 415–20).

In December 1996, the veteran underwent a VA examination. R. at 460–64. The examiner noted impressions of a "[h]istory of trauma to the left knee", severe degenerative arthritic process secondary to left-knee trauma, "multiple skeletal changes" compatible with degenerative arthritis, and "multiple findings of degenerative disease of the axial skeleton". R. at 464. Regarding secondary causation, the examiner opined as follows:

The question is raised as to whether altered gait from the patient's left knee is producing the multiple joint complaints that the patient reports and demonstrates on physical examination and x-ray. *I do not believe that these findings can be attributed to the knee injury, but rather represent a natural course of events in this patient's health profile.*

*Ibid.* (emphasis added).

In January 1997, the RO issued an SSOC that continued to deny service connection for the left hip and that discussed briefly the December 1996 medical examination, as follows: "The VA examination shows level pelvis and shoulders[,] and the examiner opined that the current arthritis process of multiple joints, including the left hip[,] is not a result

of altered gait due to the left knee but is rather a natural course of events." R. at 471. In February 1997, James Stanley, counsel for the appellant, sent the RO a letter that stated that he had "not been furnished a copy of" the December 1996 VA examination record and therefore he had "not responded to the contents" of the examination. Supplemental (Suppl.) R. at 1.

In the February 1998 BVA decision here on appeal, the Board denied as not well grounded the veteran's left-hip secondary-service-connection claim because he "ha[d] failed to show ... medical evidence which states that the current left hip disability is proximately due to ... a service-connected disability." R. at 4.

## II. Analysis

The appellant seems to raise explicitly only one issue, as follows: "Whether the appellant's due process rights were violated by the ... failure [of VA] to furnish him with a copy of a [December 1996] medical report [that] it contended [sic] to rely upon in the adjudication of his claim". Brief (Br.) at 3; *see also* Br. at 4 (appellant "ra[is]es only one point of contention on appeal[; t]hat is of due process"). However, the appellant's contention also implicates statutory and regulatory provisions, in the context of which any constitutional challenge must be examined, and "fair process" considerations under this Court's caselaw dating from *Thurber v. Brown,* 5 Vet.App. 119 (1993).

In order for us to determine whether the veteran was afforded due process or fair process in this case, we must examine whether VA had in fact been under any obligation to furnish to the appellant a copy of the December 1996 medical report. The right to gain access to documents contained in VA claims files is limited by 38 U.S.C. § 5701, which provides that in general "[a]ll files, records, reports, and other papers and documents pertaining to any claim ... shall be confidential and privileged" and "no disclosure" of VA records "shall be made", *except* that disclosure of such documents "shall" be made to a claimant or *"duly authorized agent or representative of a claimant"* under certain specified circumstances. 38 U.S.C. § 5701(a), (b)(1) (emphasis added);

*see also* 38 C.F.R. § 1.500(b) (1998) ("A claimant may ***not*** have access to . . . [VA] records concerning himself or herself nor may a claimant inspect records concerning himself or herself. Disclosure of information from [VA] records to a claimant or his or her duly authorized representative may be made, however, under the provisions of §§ 1.501 through 1.526." (emphasis added)).

The Secretary has defined a "duly authorized representative" as, inter alia, an "attorney who has filed the declaration required by § 14.629(b)(1) of this chapter". 38 C.F.R. § 1.524(b)(1) (1998); *see also* 38 C.F.R. § 1.525(a)(1) (1998) (regarding inspection of records by and/or disclosure of information to "recognized attorneys (§ 14.629(b) of this chapter)"). The Court is unable to locate " § 14.629(b)(1)" within chapter 1 of title 38 of the Code of Federal Regulations, and notes that 38 C.F.R. § 14.629(b) (1998), which contains no subparagraph (1), concerns "*Agents*" rather than attorneys; however, the next paragraph, 38 C.F.R. § 14.629(*c*)(1) (1998), ***does*** pertain to "*Attorneys*" and ***does*** contain a subparagraph (1). Hence, we believe that the Secretary had not intended in 38 C.F.R. §§ 1.524(b)(1) and 1.525(a)(1) to cross reference to § 14.629(b)(1), which does not exist, but instead had intended to refer to 38 C.F.R. § 14.629(c)(1). *See* 38 C.F.R. § 14.629(b)(1) (1969) (regulation, which is substantially similar to current 38 C.F.R. § 14.629(c)(1), that was in existence at time of promulgation of 38 C.F.R. §§ 1.524(b)(1) and 1.525(a)(1)).

As to 38 C.F.R. § 14.629(c)(1), that regulation requires as follows: "An attorney engaged by a claimant shall state in writing on his or her letterhead that the attorney is authorized to represent the claimant in order to have access to information in the claimant's file pertinent to the particular claim presented." 38 C.F.R. § 14.629(c)(1); *Shepard v. West*, 11 Vet.App. 518, 521 (1998) (describing § 14.629). The Court notes that the regulation differentiates between access to "information . . . pertinent to the particular claim presented", for which all that is required is a letter from the attorney on letterhead stating that he is "authorized to represent the claimant", and "access to ***all***

information in an individual's records", for which "a signed written consent from the claimant" is required. 38 C.F.R. § 14.629(c)(1) (emphasis added). Here, the former rather than the latter is implicated because only information pertinent to the veteran's left-hip claim is involved.

Regarding the method that must be used by such a "duly authorized agent or representative", 38 U.S.C. § 5701(b)(1); 38 C.F.R. § 1.524(b)(1), in order to obtain documents in VA custody, section 5702(a) of title 38, U.S.Code, provides:

> (a) ***Any person*** desiring a copy of any record . . . in the custody of the Secretary that may be disclosed under section 5701 of this title ***must submit to the Secretary an application in writing for such copy***. The application shall state specifically—
>
> (1) the particular record . . ., a copy of which is desired . . .; and
>
> (2) the purpose for which such copy is desired to be used.

38 U.S.C. § 5702(a) (emphasis added). The Secretary has provided the following amplification through regulation:

> (a) Any person desiring a copy of any record or document in the custody of the Department of Veterans Affairs, which is subject to be furnished under [38 C.F.R.] §§ 1.501 through 1.526, must make ***written application*** for such copy to the Department of Veterans Affairs installation having custody of the subject matter desired, ***stating specifically***: (1) The particular record or document the copy of which is desired and whether certified and validated, or uncertified, (2) the purpose for which such copy is desired to be used.

38 C.F.R. § 1.526(a) (1998) (emphasis added).

Based on the foregoing, the Court concludes that VA has a duty to provide to a claimant or his "duly authorized representative" copies of documents within VA custody when (1) a "written application" for such a document is made that (2) identifies the "particular record" sought, (3) indicates whether the copy should be "certified and validated or uncertified", and (4) states the "purpose" for which the document is to be used. 38 U.S.C. §§ 5701(a), (b)(1), 5702(a)(1); 38 C.F.R.

§§ 1.501(b)(1), 1.526(a). When that duly authorized representative is an attorney who seeks information pertinent *only* to the claim as to which he is representing the claimant, that attorney must "state in writing on his or her letterhead that the attorney is authorized to represent the claimant". 38 C.F.R. § 14.629(c)(1). The Secretary's requiring such a statement by an attorney is a rational regulatory method to balance the general statutory requirements that documents contained in VA claims files "shall be confidential and privileged", 38 U.S.C. § 5701(a), but that disclosure "shall" be made to a "duly authorized representative of a claimant", 38 U.S.C. § 5701(b)(1). *See* 38 U.S.C. § 501(a)(1), (4) authorizing Secretary to prescribe regulations that are "necessary or appropriate to carry out the laws administered by [VA] and [that] are consistent with those laws" regarding, inter alia, "(the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws" and "the manner and form of adjudications and awards)"; *see also Gilpin v. West,* 155 F.3d 1353, 1356 (Fed.Cir.1998) court "must ... accept" Secretary's "rational and permissible" regulation (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *Degmetich,* 104 F.3d at 1331 (sustaining as not "arbitrary" under *Chevron, supra,* Secretary's interpretation of statute regarding VA benefits when that interpretation comported with other provisions of statute "as a whole").

In this case, counsel for the appellant contends that his February 1997 letter on his letterhead to the RO constituted a valid request for a copy of the December 1996 VA medical examination. Br. at 6. That letter stated:

> This will constitute Hersey Anderson's supplemental substantive appeal.
>
> . . . .
>
> Mr. Anderson testified regarding his altered gait and its impact on his left hip. Since he has not been furnished a copy of the VA compensation examination he has not responded to the contents at this time.

*Thurba* [sic] *v. Brown,* 5 Vet.App. 93[sic] (1993).

Suppl. R. at 1. It is not entirely clear to the Court that appellant's counsel's February 1997 letter met the requirements of the pertinent law and regulation set forth above sufficiently to have triggered a duty on the part of the RO to produce a copy of the December 1996 VA examination report. *See, e.g.,* 38 C.F.R. §§ 1.524(b)(1) (defining "duly authorized representative" as, inter alia, "attorney who has filed" § 14.629(c)(1) declaration), 14.629(c)(1) (describing declaration as written statement on letterhead that attorney "is authorized to represent" claimant); *see also* 38 C.F.R. § 1.526(a) (application for record in VA custody must state whether copy requested is to be "certified and validated, or uncertified"). However, we need not decide that question because, even assuming that counsel for the appellant had requested a copy of the December 1996 medical record, the RO's failure to provide a copy to him could not have prejudiced the veteran because, for the reasons that follow, the December 1996 medical record did not contain any evidence that could have well grounded his claim for secondary service connection for arthritis of the left hip.

 Secondary service connection shall be awarded when a disability "is proximately due to or the result of a service-connected disease or injury". 38 C.F.R. § 3.310(a) (1998); *Libertine v. Brown,* 9 Vet.App. 521, 522 (1996). A claim for secondary service connection, must, as must all claims, be well grounded. 38 U.S.C. § 5107(a); *see Jones (Wayne) v. Brown,* 7 Vet.App. 134, 137–38 (1994); *Proscelle v. Derwinski,* 2 Vet.App. 629, 633 (1992). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Generally, for a service-connection claim (here under 38 U.S.C. § 1131) to be well grounded a claimant must submit evidence of each of the following: (1) Medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evi-

dence of a nexus between the asserted in-service injury or disease and the current disability. *See Elkins v. West,* 12 Vet.App. 209, 213 (1999) (en banc) (citing *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd. per curiam,* 78 F.3d 604, 1996 WL 56489 (Fed. Cir.1996) (table), and *Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied sub nom. Epps v. West,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998) (mem.)). Where the determinative issue involves medical etiology or a medical diagnosis, competent medical evidence that a claim is "plausible" or "possible" is generally required for the claim to be well grounded. *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). Lay testimony cannot provide such medical evidence because lay persons are not competent to offer medical opinions. *See Stadin v. Brown,* 8 Vet.App. 280, 284 (1995); *Grottveit,* 5 Vet.App. at 93.

 The credibility of the evidence presented in support of a claim is generally presumed when determining whether it is well grounded. *See Elkins,* 12 Vet.App. at 219 (citing *Robinette v. Brown,* 8 Vet.App. 69, 75–76 (1995)). The determination whether a claim is well grounded is subject to de novo review by this Court. *See Robinette,* 8 Vet.App. at 74.

 In this case, the veteran's claim is not well grounded because there is no competent evidence that his claimed condition of left-hip arthritis "is proximately due to or the result of" his service-connected left-knee condition. 38 C.F.R. § 3.310(a); *Libertine, supra.* The only evidence of such a nexus is the veteran's own belief. R. at 350 ("[t]he doctor … said that my left hip had severe arthritis in it which I feel is related to the problems with my knee"). However, the veteran is not competent to provide an opinion as to medical nexus. *See Stadin, Heuer,* and *Grottveit,* all *supra.* Moreover, in the December 1996 VA examination, the examiner stated: "I do not believe that these findings can be attributed to the knee injury, but rather represent a natural course of events in this patient's health profile." R. at 464. Because neither the December 1996 examination report nor

any other competent evidence of record indicated a connection between the veteran's service-connected knee condition and his claimed left-hip arthritis, the Court holds, on de novo review, that the claim is not well grounded. *See Epps, Elkins, Caluza,* and *Robinette,* all *supra.*

The appellant asserts that the Board "contended to rely upon" the December 1996 examination report "in the adjudication of his claim". Br. at 3. However, the Court can find no indication in the BVA decision here on appeal to support his contention of such reliance. *See* R. at 1–9. Rather, the Board's reference to that examination appears to be more in the nature of an afterthought rather than reliance. R. at 4 ("[T]he appellant has failed to show … medical evidence which states that the current left[-]hip disability is proximately due to, the result of, or a product of aggravation of a service connected disability. In fact, the December 1996 examination is evidence to the contrary."). In any event, because the only evidence contained in the December 1996 examination report is as to the **non** existence of secondary causation, that report could not permissibly have affected the Board's decision. *See Arms v. West,* 12 Vet.App. 188, 195 (1999) ("only the evidence in support of the claim is to be considered" at well-groundedness stage).

Finally, even if the Board **had** relied upon the medical report in its denial of service connection, the veteran would still be required to have submitted medical nexus evidence in order to present a well-grounded claim because "the discrediting of evidence contrary to the granting of service connection does not [itself] serve as evidence that supports service connection." *Wandel v. West,* 11 Vet.App. 200, 206 (1998). Hence, any error that the RO might have committed, under title 38 of the U.S.Code or of the Code of Federal Regulations, or both, in not providing to the veteran's counsel a copy of the examination, assuming that a valid request had been made for such examination record, could not have prejudiced the outcome of the veteran's claim. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Elkins,* 12 Vet.App. at 219 (Court will not remand due to failure to

consider pertinent regulation when such failure "would not be prejudicial to the claimant"); *Edenfield v. Brown,* 8 Vet.App. 384, 390–91 (1995) (en banc); *Yabut v. Brown,* 6 Vet.App. 79, 85 (1993) (applying "harmless error" to BVA's failure "to provide appellant with notice and opportunity to respond to the medical treatises superfluously cited in its decision").

█ The appellant's citations in his brief (Br. at 5–6) to *Thurber, supra,* are similarly unavailing. In *Thurber,* the Court held that "before the BVA *relies,* in rendering a decision on a claim, on any evidence developed or obtained by it *subsequent to the issuance of the most recent SOC or SSOC with respect to such claim,* the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it." *Thurber,* 5 Vet.App. at 126 (emphasis added). This holding in *Thurber* was based on principles of "fair process" and "basic fair play" that the Court extracted from a variety of sources, including the U.S. Constitution, but *Thurber* did not rely upon a constitutional basis for its holdings as to the procedural protections owed to VA claimants. *Id.* at 122–26 ("Based on the Court's discussion in part IV [a discussion that included a compendium of numerous possible grounds], the Court holds ... "); *see also Marsh v. West,* 11 Vet.App. 468, 471–72 (1998) (discussing "certain procedural rights [that] govern a person's pursuit of VA benefits" and citing, inter alia, *Thurber, supra,* and *Austin, infra,* but not discussing U.S. Constitution); *Austin v. Brown,* 6 Vet.App. 547, 551–52 (1994) (discussing principle of "fair process" not grounded in U.S. Constitution). In this case, the most recent SSOC had been issued in January 1997 (R. at 471), *following* the December 1996 examination, and therefore the appellant had been provided by the SSOC with notice of the December 1996 examination report. Moreover, as concluded above, the Court cannot find that the Board "relie[d], in rendering a decision", on that report. *Thurber, supra.* Furthermore, if the veteran had believed that he had indeed requested, through counsel, that the RO provide a copy of that report, he could have

readily raised that matter to the Board; he chose not to do so, apparently. On the basis of the foregoing, the Court can find no *Thurber* "fair process" defect in the process followed by the Board in this case. As also concluded above, any fair process error due to the RO's not having furnished to the veteran's counsel a copy of the December 1996 VA examination report—assuming that counsel for the appellant had made a valid request therefor—could not have been prejudicial to the veteran on the facts of this case, given the totally unfavorable findings in that report. *See* 38 U.S.C. § 7261(b); *Elkins, Edenfield,* and *Yabut,* all *supra.*

Finally, the appellant argues that his not having been provided with a copy of the December 1996 examination report during the Board's adjudication of his claim violated the Due Process Clause of the Fifth Amendment to the U.S. Constitution; however, it is not clear that the Fifth Amendment is implicated in this case. The Due Process Clause "requires that when an individual is to be deprived of a *property interest* as a result of federal government action, the aggrieved party must be provided with notice and an opportunity to be heard". *Thurber,* 5 Vet. App. at 122–23 (emphasis added) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990)); *see also Stone v. FDIC,* 179 F.3d 1368, 1371 (Fed.Cir.1999) (noting requirement of property interest prior to applicability of Due Process Clause); *Owings v. Brown,* 8 Vet. App. 17, 23 (1995) ("the Fifth Amendment does not itself confer a property interest"), *aff'd,* 86 F.3d 1178, 1996 WL 267280 (Fed. Cir.1996) (table). In *Thurber,* the Court noted that "the Supreme Court has not yet ruled on the extent to which applicants for, rather than recipients of, government benefits have property rights in their expectations", and described the opinions of certain lower federal courts that had afforded Due Process protections to applicants for government benefits. *Id.* at 123 (citations omitted); *see also Wells v. Brown,* 9 Vet.App. 293, 297 (1996) (discussing, inter alia, *Owings,* and holding that appellant did not have property interest in VA benefits unless he could show

entitlement grounded in statute defining eligibility); *Owings,* 8 Vet.App. at 23 (quoting *Thurber* and noting that "lower federal courts are split" on issue whether applicants for government benefits are entitled to Due Process Clause protection). Hence, it may be that even if the appellant could in this case point to a duty under 38 U.S.C. § 5702 on the part of VA to have provided to his attorney a copy of the December 1996 examination report, no such duty would be enforceable under the Due Process Clause of the Fifth Amendment because he has not previously established a property right to VA benefits based on his left-hip disability. *Cf. Stone, Wells, Owings,* and *Thurber,* all *supra.*

However, we need not decide today whether the Due Process Clause of the Fifth Amendment would afford protection to an applicant for VA benefits because the Court holds that the veteran was not prejudiced by any procedural errors that may have occurred in this case. This Court is required by statute to take due account of the rule of prejudicial error. *See* 38 U.S.C. § 7261(b); *Winters v. West,* 12 Vet.App. 203, 207 (1999) (en banc) (noting that "the law does not require a useless act" and affirming, pursuant to section 7261(b), BVA's failure to reopen claim when *"it is clear"* that that claim was not well grounded); *Edenfield, supra* (noting that when outcome, disallowance of the claim, would be same whether VA had treated claim as not well grounded or, as in *Edenfield,* adjudicated it on the merits, Court will affirm BVA disallowance of claim).

Constitutional errors are generally—but not always—subject to the harmless or non-prejudicial-error rule. In *Chapman v. California,* the United States Supreme Court (Supreme Court) concluded in the context of a criminal case: "[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As to the standard of review for harmless constitutional error in a criminal case, the Supreme Court stated there: "[B]efore a federal constitutional error can be held harmless, the

court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. 824; *see also Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (noting that in *Chapman* the Supreme Court had "rejected the argument that the Constitution requires a blanket rule of automatic reversal in the case of constitutional error"), *reh'g denied,* 508 U.S. 968, 113 S.Ct. 2951, 124 L.Ed.2d 698 (1993). In *Brecht,* however, the Supreme Court held that the very strict standard set forth in *Chapman* did not apply to habeas corpus petitions based on due process violations during criminal proceedings, and instead lowered the requirement substantially by holding that in such cases "the standard . . . is whether the . . . error . . . 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht,* 507 U.S. at 622, 113 S.Ct. 1710 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). "Since *Chapman,* [the Supreme Court has] . . . consistently made clear that it is the duty of a reviewing court to . . . ignore errors that are harmless, including most constitutional violations". *United States v. Lane,* 474 U.S. 438, 445, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (internal quotation omitted); *see also Neder v. United States,* —— U.S. ——, —— – ——, 119 S.Ct. 1827, 1837–39, 144 L.Ed.2d 35 (1999) (holding *Chapman* harmless-error rule applicable to erroneous jury instruction and holding that error was harmless); *Satterwhite v. Texas,* 486 U.S. 249, 258–60, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (holding *Chapman* harmless-error rule applicable to certain violation of Sixth Amendment at sentencing phase of capital trial but holding that error was not "beyond a reasonable doubt" harmless); *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) ("while there are some errors to which *Chapman* does not apply, they are the exception and not the rule").

Recently, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) applied the harmless-error rule as to a constitutional, Due Process Clause challenge that had arisen in this Court. *See In re Bailey,* 182 F.3d 860, 871–72 (Fed.Cir.1999) ("[e]ven assuming

it were [presumably constitutional] error for ... [this Court's Admission and Practice] Committee to decide to forego a hearing before its first submission [of recommendation] to the [C]ourt, which we do not conclude, it was at most harmless error" because a hearing was ordered by the Court thereafter and was provided). *But cf. Stone,* 179 F.3d at 1377 (holding in civil-service-employee-discharge case that if ex parte communication by agency official to deciding agency official introduced new and material information, "then a due process violation has occurred" because of the employee's essential right of notice and opportunity to respond, and "such a violation is not subject to the harmless error test").

Although we cannot discern a test articulated by either the Supreme Court or the Federal Circuit indicating what standard should apply to a violation of the Due Process Clause of the Fifth Amendment in a noncriminal setting, it seems very likely that it would be no higher than the one set by *Chapman* for criminal cases where life and liberty are at stake. Even applying the very strict test articulated in the criminal context of *Chapman,* we hold that any failure by VA to provide a copy of the December 1996 examination report could not conceivably have prejudiced the outcome of the veteran's case. As noted above, the veteran's claim was denied because of a lack of medical evidence of a nexus to service, and the disputed report contained no such evidence. *See Arms, supra.* Moreover, any attack that the veteran might have mounted as to the substance of the December 1996 examination report could not have affected the requirement that he submit medical nexus evidence in order to well ground his claim. *See Wandel, supra.* Hence, the Court is left without "reasonable doubt"—indeed without any doubt—that the error asserted here had no "substantial and injurious effect or influence in determining the" outcome of the veteran's case, and the Court thus holds that any constitutional error that may have occurred was not prejudicial. *Chapman* and *Brecht,* both *supra; see also* 38 U.S.C. § 7261(b); *Winters* and *Edenfield,* both *supra.*

## III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant reversal or remand under 38 U.S.C. §§ 1131, 5107(a), 5701, 5702(a), 7104(a), (d)(1), or 7261 or 38 C.F.R. §§ 1.524(b)(1), 1.525(a)(1), 1.526(a), 3.310, or 14.629(c)(1). Therefore, although the Court denies the Secretary's motion for single-judge affirmance, the Court nonetheless affirms the February 27, 1998, BVA decision.

AFFIRMED.