# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-1551

ANDRE MARTINEZ, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 28, 2019                                    Decided May 21, 2019)

*Christopher F. Attig*, of Little Rock, Arkansas, for the appellant.

*Ashley D. Varga*, with whom *Jessica K. Grunberg*; *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy*, *Jr.*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before MEREDITH, TOTH, and FALVEY, *Judges*.

FALVEY, *Judge*: In this appeal, which is timely and over which the Court has jurisdiction, *see* 38 U.S.C. §§ 7252(a), 7266(a), we are asked to decide whether the Secretary's failure to automatically provide a claimant with a copy of a VA medical examination report violates either the duty to assist provision of 38 U.S.C. § 5103A or the Due Process Clause of the Fifth Amendment to the U.S. Constitution.[1] The appellant challenges a January 27, 2017, Board of Veterans' Appeals (Board) decision that denied disability compensation for sleep apnea.[2] The

---

[1] Mr. Martinez did not raise these arguments below, but we have jurisdiction over his claim and the relevant facts are not in dispute. After balancing the competing interests at stake, we will exercise our discretion to address the arguments in the first instance. *See Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2000) (when presented with an issue newly raised on appeal related to a claim over which it otherwise has jurisdiction, the Court has discretion to hear the issue).

[2] The Board also denied an earlier effective date for service-connected post-traumatic stress disorder (PTSD). The appellant does not challenge this denial, and the Court will not address it on appeal. *See Pederson v. McDonald*, 27 Vet.App. 276, 283 (2015) (en banc) ("[T]his Court, like other courts, will generally decline to exercise its authority to address an issue not raised by an appellant in his or her opening brief.") (emphasis omitted). The Board also remanded the matters of service connection for a joint disorder of the left hip, left knee, and left ankle; an increased initial disability rating for status-post L3-L4 hemilaminectomy and microdiscectomy; an increased initial disability rating for radiculopathy of the left lower extremity; an increased initial disability rating for peripheral neuropathy of the right lower extremity; an increased initial disability rating for peripheral neuropathy of the left lower extremity; an increased initial disability rating for PTSD with major depressive disorder; a compensable disability rating for headaches; and a total disability rating based on individual unemployability. The Court lacks jurisdiction to address

Board's denial was based in part on a 2016 VA medical examination. Although VA informed Mr. Martinez that this examination was in VA's possession and that it supported a denial of benefits, he did not request a copy before the Board denied his claim. We hold that neither section 5103A nor constitutional due process, as applied to Mr. Martinez, required the Secretary to have automatically provided the veteranwith a copy of a VA medical examination prior to rendering an adverse decision on his claim. Therefore, we will affirm the Board's January 27, 2017, decision.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

The appellant served honorably in the U.S. Army from January 1969 to December 1970 and from September 1981 to April 1988. In May 2005, he filed his current claim for sleep apnea. Record (R.) at 3380. We address here only the most salient aspects of his lengthy claim history.

In January 2016, VA obtained a VA medical examination report that addressed whether the veteran's sleep apnea is related to his service-connected post-traumatic stress disorder. R. at 499-506. The 2016 examiner concluded that the veteran's sleep apnea was less likely than not caused or aggravated by PTSD. R. at 505. The examiner noted that the medical literature shows that PTSD does not cause sleep apnea. *Id*. Regarding aggravation, the examiner observed that, if a mental condition leads to overeating, it may be possible for that condition to worsen sleep apnea because increased fatty tissue reduces airway capacity. *Id*. But, the examiner explained that, in Mr. Martinez's case, PTSD did not aggravate sleep apnea because the veteran's "body mass index is not at a level that might produce airway restriction." *Id*.

In May 2016, relying on this examination, the regional office (RO) issued a Supplemental Statement of the Case (SSOC) that again denied compensation for sleep apnea. R. at 237-46. The RO discussed the 2016 examination in detail and explained that the examiner found it less likely than not that sleep apnea is related to a service-connected mental condition in part because "there is no accepted clinical reasoning or research to suggest PTSD causes obstructive sleep apnea." R. at 245. Because the record showed no evidence connecting sleep apnea to service or a service-connected disability, the RO denied compensation. R. at 246. The SSOC was sent to both Mr. Martinez and his then counsel. *See* R. at 235, 914-17.

---

these nonfinal matters. *See* 38 U.S.C. § 7252(a) (Court has "exclusive jurisdiction" to review final Board decisions); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order) (a Board remand "does not represent a final decision over which this Court has jurisdiction").

After the 2016 SSOC issued, Mr. Martinez's claim returned to the Board and resumed its place on the Board's docket. R. at 162. The Board then notified the veteran that he had 90 days to submit additional argument and evidence. *Id*. In response, Mr. Martinez, through former counsel, informed the Board that he planned to submit a written brief and might also submit additional evidence for the Board's consideration. R. at 146. He later requested that the Board delay deciding his appeal for 30 more days so that he could "submit a written brief and any additional evidence." R. at 132. As promised, Mr. Martinez submitted a timely written brief in which he argued that sleep apnea should be secondarily service-connected to PTSD because medical treatise evidence attached to the brief definitively showed a causal relationship between the two conditions. R. at 39. At no point did the veteran ask VA to provide him a copy of the 2016 VA examination.

On January 27, 2017, the Board denied compensation for sleep apnea. R. at 6. The Board explained that it found the 2016 VA examination highly probative and that the veteran's medical treatise evidence did not support his claim. R. at 12-16. The veteran now appeals the Board's decision.

## II. ANALYSIS[3]

The appellant challenges the Board's decision to deny him disability compensation for sleep apnea, basing his primary argument on his reading of certain provisions in title 38 of the U.S. Code. Appellant's Brief (Br.) at 9-18; Reply Br. at 3-11. Secondarily, he invokes the Due Process Clause of the Fifth Amendment to the U.S. Constitution for remand of the Board's decision. Appellant's Br. at 19-29; Reply Br. at 11-15. Ultimately, his arguments are not persuasive and, additionally, he fails to demonstrate prejudicial error. We begin by addressing the questions of statutory interpretation and then turn to the appellant's due process argument.

---

[3] At the outset, we note that several of the statutory provisions at issue in this case have been amended or repealed effective February 19, 2019, as part of VA's transition to a new appeals process. *See* Veterans Appeals Improvement and Modernization Act of 2017 (VAIMA), Pub. L. 115-55, § 2(q)(1), 131 Stat. 1111 (Aug. 23, 2017); 84 Fed. Reg. 2449 (Feb. 7, 2019) (providing notice that the effective date of the new VA appeals system outlined in the VAIMA is February 19, 2019). Accordingly, our decision today has limited application to only those cases unaffected by the VAIMA. All references to statutes in this opinion are to the versions in effect in January 2016 when Mr. Martinez underwent the VA medical examination at issue.

A. Statutory Interpretation

Mr. Martinez's chief argument is rooted in 38 U.S.C. § 5103A, which states that the Secretary "shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim." 38 U.S.C. § 5103A(a)(1) (2016). The veteran argues that this requires the Secretary to automatically "give a copy of a VA medical opinion" to a claimant whenever the Secretary intends to rely on the opinion to deny a claim. Appellant's Br. at 10. According to Mr. Martinez, the plain language of section 5103A supports his interpretation because the word "obtaining" is commonly defined as "getting or acquiring something." Appellant's Br. at 11. He contends that his reading of the statute is consistent with the overall statutory and regulatory scheme, Reply Br. at 6, and comports both with Congress's clear intention for the Secretary to assist a veteran and the "theme of mutual help" that is "woven throughout [section] 5103A." Appellant's Br. at 13.

The Secretary disputes these contentions. He argues that, under the circumstances of this case and viewed in the context of the overall statutory scheme, the language of section 5103A plainly and unambiguously does not require VA to ensure that a claimant receives a copy of a claims file document like a medical examination report absent a written request. Secretary's Br. at 14-20. In the alternative, he asserts that the language of the statute is ambiguous and that the Court should defer to the Secretary's reasonable statutory interpretation. Secretary's Br. at 20-24.

We thus are called upon to consider the language of section 5103A. The Court reviews statutory construction questions de novo. 38 U.S.C. § 7261(a)(1). We first address whether the language of the statute is plain and unambiguous. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). In making this determination, we look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. at 341. "[I]f the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" then the Court's statutory inquiry comes to an end. *Id.* at 340 (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)).

Several canons of statutory construction guide our review of the statute's plain language. First, it is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). "Ambiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Thus, in

4

assessing the language of a statute, courts review the overall statutory scheme "'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'" *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (quoting SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 46:06 (6th ed. 2000)), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007).

Related canons caution against a construction that would nullify or impliedly repeal other statutory requirements. Under "the so-called surplusage canon [we presume] that each word Congress uses is there for a reason," *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017), and we are "obliged to give effect, if possible, to every word Congress used," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Thus, "one section of a law should not be interpreted so as to render another section meaningless." *Princess Cruises, Inc. v. United States*, 201 F.3d 1352, 1362 (Fed. Cir. 2000). Similarly, "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude operation of the other." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115 (2014). "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550 (1974).

Additionally, "it is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). Thus, "'[s]pecific terms prevail over the general in the same or another statute which otherwise might be controlling.'" *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228-29 (1957) (quoting *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932)). "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton*, 417 U.S. at 550-51.

Here, we reject Mr. Martinez's contention that section 5103A unambiguously requires the Secretary to provide a full copy of a medical examination report whenever he intends to rely on the examination to deny a claim. As we explain below, the veteran's reading of section 5103A is not required by the language of the statute, does not fit with the overall statutory scheme, and would render several statutory provisions void or superfluous.

First, no statute expressly requires the Secretary to automatically send a claimant a full copy of a VA medical examination. Although Mr. Martinez points to section 5103A, the plain

language of that statute does not include this specific requirement. Rather, section 5103A, which sets out the Secretary's general duty to assist, merely states that "[t]he Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim." 38 U.S.C. § 5103A(a)(1). This section is silent on how or when the Secretary must distribute the records he procures on the claimant's behalf and it does not prohibit the Secretary from requiring a written request for those records. The section simply provides a broad direction for the Secretary to assist a claimant in obtaining evidence. Thus, nothing in the language of the statute itself requires the Court to find in favor of Mr. Martinez's construction. *See Robinson*, 519 U.S. at 341.

Furthermore, Mr. Martinez's construction of section 5103A is inconsistent with the overall statutory scheme. Immediately preceding section 5103A in the statutory scheme is section 5103, which is titled "Notice to claimants of required information and evidence." 38 U.S.C. § 5103 (2016). It states that the Secretary must notify the claimant of the evidence that the Secretary "will attempt to obtain on behalf of the claimant." 38 U.S.C. § 5103(a). Section 5103A is followed directly by section 5104, which requires the Secretary to notify a claimant of decisions and states that notice of an adverse decision must include a statement of reasons or bases and a summary of the relied-on evidence. 38 U.S.C. § 5104(a), (b) (2016).

Reading these statutes together demonstrates Congress's intention for the Secretary to gather evidence on a claimant's behalf and notify a claimant of the substance of this evidence. Section 5103A covers securing evidence necessary to substantiate a claim, such as finding service records or procuring medical examinations, while sections 5103 and 5104 ensure that a claimant is kept abreast of the Secretary's duty-to-assist activities through various forms of notification. In none of these sections did Congress include a requirement that the Secretary furnish a copy of an examination obtained pursuant to the duty to assist. Significantly, the use of the past tense throughout section 5104(b) demonstrates that Congress intended the notification requirements of that statute to be post-decisional. That is, the statute imposes on the Secretary a requirement to provide notice or disclose the various considerations that influenced the ultimate rating decision so that the veteran can challenge the decision to the Board.

A construction of section 5103A that would require the Secretary to send a full copy of a medical examination report whenever that examination would be used to deny a claim is inconsistent with this overall statutory scheme. Section 5103A's placement between these two

6

provisions and our obligation "to give effect, if possible, to every word Congress used," bolster the Court's view that sections 5103, 5103A, and 5104 operate hand-in-hand. *Reiter*, 442 U.S. at 339; *see Davis*, 489 U.S. at 809. Furthermore, the specific notification duties imposed by section 5104 are more on point than the general duty to assist provision of section 5103A, and "'[s]pecific terms prevail over the general in the same or another statute which otherwise might be controlling.'" *Fourco Glass Co.*, 353 U.S. at 228-29 (quoting *D. Ginsberg & Sons*, 285 U.S. at 208).

Additionally, Mr. Martinez's broad construction of section 5103A conflicts with several specific statutory provisions that do require the Secretary to send a claimant a copy of a medical examination report under certain circumstances. Sections 5109 and 7109, which address the Secretary's and the Board's obligations with respect to a medical opinion obtained from an expert outside of VA, direct the Secretary or Board to "furnish the claimant with a copy of such opinion when it is received by the Secretary." 38 U.S.C. §§ 5109(c) (2016), 7109(c) (2016).[4] Sections 5701 and 5702 address the method that must be used to obtain certain documents that the Secretary has procured on the claimant's behalf. *Anderson v. West*, 12 Vet.App. 491, 495 (1999) (citing 38 U.S.C. §§ 5701(a), (b)(1); 5702(a)(1)). Section 5702(a) states that any person who would like a copy of a record that may be disclosed under section 5701 "must submit to the Secretary an application in writing for such copy." 38 U.S.C. § 5702(a) (2016).[5] And section 5701 requires the Secretary, in certain circumstances, to disclose to "a claimant or duly authorized agent or representative of a claimant" "[a]ll files, records, reports, and other papers and documents." 38 U.S.C. § 5701(a), (b)(1) (eff. to July 21, 2016).

Mr. Martinez's broad reading of section 5103A would render superfluous, if not void, the specific statutory requirements set out in sections 5109, 5701, 5702, and 7109. If, as the appellant contends, section 5103A requires the Secretary to send a full copy of a medical examination report in every case, there would be no need for sections 5109 and 7109 to specifically direct the Secretary that copies of examinations from outside VA must be furnished to the veteran when they are received. Similarly, there would be no need for a veteran to submit a written request for a claims file document under sections 5701 and 5702; under the appellant's construction of section 5103A,

---

[4] Section 7109 has been repealed. Pub. L. 115-55, § 2(u)(1), 131 Stat. 1113 (Aug. 23, 2017).

[5] This statute has not been amended or repealed.

he would have already received copies of claims file documents. We should not adopt an interpretation of section 5103A that would nullify or impliedly repeal these specific statutory requirements. *See Morton*, 417 U.S. at 550-51; *see also Roper*, 20 Vet.App. at 178.

Moreover, Mr. Martinez's interpretation of section 5103A is at odds with the "theme of mutual help" that he concedes is part of the duty to assist. Appellant's Br. at 13. As we have repeatedly observed, "[t]he duty to assist is not always a one-way street." *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991). It "does not encompass 'a duty to prove a claim with the claimant only in a passive role.'" *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (quoting *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992)), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). Here, as discussed below, Mr. Martinez was made aware of the adverse 2016 VA medical examination by the May 2016 SSOC. If he wanted a copy, he needed only to have requested one rather than passively standing by. It is not contrary to the concept of "mutual help" for the statutory scheme to require Mr. Martinez to have to request a copy of the medical examination report rather than mandate its automatic production.

In our view, the relevant statutory scheme is harmonious and complementary. Section 5103A sets out a general duty to help claimants obtain evidence and sections 5103 and 5104 detail the Secretary's notification duties regarding that evidence. Sections 5109 and 7109 note a specific circumstance in which the Secretary is required to automatically furnish a copy of an examination, and sections 5701 and 5702 address the specific method to be used in obtaining certain claims file documents.[6] The Court should not find in favor of a plain language statutory interpretation that reads out all these complementary sections. *See POM Wonderful LLC*, 573 U.S. at 115.

We therefore disagree with the appellant that the plain language of section 5103A broadly requires the Secretary to send a copy of a medical examination report whenever the Secretary intends to rely on the examination to deny a claim. This construction reads section 5103A in isolation and ignores both the context of the statute and the overall statutory scheme. It would

---

[6] In a similar vein, we note that section 5103A(d) specifically pertains to the Secretary's duty to obtain a medical examination or opinion in compensation claims, yet does not contain any instruction to the Secretary regarding the provision of medical examination reports or opinions to claimants. *See* 38 U.S.C. § 5103A(d) (2016). This strengthens our conclusions that section 5103A "sets out a general duty to help claimants obtain evidence," while sections 5109 and 7109 "note a specific circumstance in which the Secretary is required to automatically furnish a copy of an examination, and sections 5701 and 5702 address the specific method to be used in obtaining certain claims file documents." *Ante* at 8.

render void or superfluous the specific statutory provisions of sections 5109, 5701, 5702, and 7109. And it does not comport with the theme of mutual help that the appellant concedes is part of the duty to assist.[7] Accordingly, we hold that the plain and unambiguous language of section 5103A generally addresses the procurement of evidence under the duty to assist and does not require the Secretary to automatically send the claimant a copy of a VA medical examination report that the Secretary has obtained on the claimant's behalf.

Because we find that the language of section 5103A is unambiguous, we do not reach the Secretary's alternative argument that the statute is ambiguous and the Court should defer to his interpretation. *See INS v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) (explaining that, where a canon of statutory construction resolves an ambiguity, there is no deference due to the Agency's interpretation of the statute under *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984)); *Sucic v. Wilkie*, 921 F.3d 1095, 1101 (Fed. Cir. 2019) (because "the statute [is] unambiguous, we do not reach the issue of deference due to the VA's interpretation").

### B. Due Process Clause

Mr. Martinez also argues that VA deprived him of his constitutional right to procedural due process. According to Mr. Martinez, VA violated his rights because the Secretary did not automatically send him a copy of the 2016 medical examination report before relying on the examination to deny the claim. Appellant's Br. at 19.

The Due Process Clause of the Fifth Amendment of the U.S. Constitution guarantees that a person will not be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V; *see Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In considering whether there has been a violation of procedural due process, courts weigh "the private interest that will be affected by the official action"; "the risk of an erroneous deprivation of such interest

---

[7] The Court additionally notes that Mr. Martinez's phrasing of his objection—"The Secretary did not give [him] a copy of the opinion *before relying on it to deny the claim*," Appellant's Br. at 1 (emphasis added)—implies some level of preadjudication of the evidence, an action that the Court has held in other contexts is not required of VA. *See Bryant v. Shinseki*, 23 Vet.App. 488, 498 (2010) (per curiam) ("Nothing in [38 C.F.R.] § 3.103(c)(2) supports the appellant's contention that the regulation requires a hearing officer to preadjudicate or otherwise weigh conflicting evidence prior to or at the hearing."); *Locklear v. Nicholson*, 20 Vet.App. 410, 415-16 (2006) (finding that VA's duty to notify under 38 U.S.C. § 5103(a) does not extend to advising a claimant that the evidence already of record is insufficient to substantiate the claim because VA is not required to provide "predecisional adjudication").

through the procedures used[;] . . . the probable value, if any, of additional or substitute procedural safeguards"; and the Government's interest. *Id*. at 335. "The question is whether the totality of the situation provides the veterans with adequate notice of the judicial disposition of their claim and an adequate opportunity to challenge an adverse ruling." *E. Paralyzed Veterans Ass'n, Inc. v. Sec'y of Veterans Affairs*, 257 F.3d 1352, 1359 (Fed. Cir. 2001); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-46 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond."). This consideration "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Court reviews constitutional questions de novo. *Buzinski v. Brown*, 6 Vet.App. 360, 365 (1994).

Applying these factors here, we find no violation of constitutional due process as applied to Mr. Martinez. It is well settled that veterans have a property interest in their applications for benefits that is protected by the Fifth Amendment's Due Process Clause because their benefits are nondiscretionary and mandated by statute. *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009). That Mr. Martinez has a strong private interest in his past-due disability compensation is "significant and obvious." *Noah v. McDonald*, 28 Vet.App. 120, 130 (2016). And reasonably, we find that the Government's interest in "avoiding the fiscal and administrative burden of mailing a copy of every single document it obtains to every single claimant" is less significant.[8] *See* Secretary's Br. at 27.

But, there is little risk that the Secretary's practices could erroneously deprive a veteran of deserved disability compensation. The Secretary's notification and case development procedures afforded Mr. Martinez detailed notice of the adverse evidence and provided him with several meaningful opportunities to be heard. The May 2016 SSOC addressed the 2016 examination in detail, notified the veteran that the examiner found no causal relationship between sleep apnea and PTSD, and explained that the denial of service connection was based in part on the 2016 examination. R. at 245-46. Attached to the SSOC was a form notifying the veteran that he had 30 days in which to submit additional information or evidence. R. at 247. After the matter returned to the Board, the veteran again received notice that he had 90 days in which to submit additional

---

[8] The Secretary estimated that the postage to send the medical examination report for every examination VA provided in 2017—assuming that each mailing took only a single stamp—amounted to approximately $650,000. Secretary's Br. at 27.

argument and evidence. R. at 162. In response, he requested that the Board delay deciding his appeal for 30 more days. R. at 132. And then Mr. Martinez submitted a written brief in which he argued that the medical literature supported a connection between sleep apnea and PTSD. R. at 39. Following this, the Board issued a decision that discussed the veteran's arguments and evidence, explained that the veteran's medical treatise evidence did not support his claim, and notified him of his rights to Board reconsideration and an appeal to this Court. R. at 2-34.

Mr. Martinez presents little support for concluding that the additional safeguard he suggests–automatically mailing a copy of a medical examination report to every claimant-could lessen the risk of an erroneous deprivation of benefits. Mr. Martinez was provided a detailed description of the 2016 VA medical examination. He had several meaningful opportunities to respond to it, and did so. At any point during the VA adjudicatory process, the represented veteran could have submitted a written request for a copy of the 2016 examination. It is not clear why he did not do so. The pertinent statutes and regulations allow him to obtain a copy of the examination upon written request, and "everyone dealing with the Government is charged with knowledge of federal statutes and lawfully promulgated agency regulations." *Morris v. Derwinski*, 1 Vet.App. 260, 265 (1991).

The Court observes that, on its face, the written argument that the veteran submitted to the Board directly responds to the SSOC: In the SSOC, VA informed the veteran that the 2016 examiner found "no accepted clinical reasoning or research to suggest [that] PTSD causes obstructive sleep apnea," R. at 245, and the veteran's written brief argued that the medical literature does, in fact, support a link between the two conditions, R. at 39.

After weighing the *Mathews* factors and the entirety of this situation, we find that Mr. Martinez received due process of law. Although his private interest in his benefits is strong, and the Government's interest in saving the cost of postage is less so, the veteran was provided detailed notice, a meaningful opportunity to develop his claim, and several chances to challenge VA's adverse determination. Overall, "the totality of the situation" provided Mr. Martinez "'adequate notice of judicial disposition of [his] claim and an adequate opportunity to challenge an adverse ruling.'" *Prickett v. Nicholson*, 20 Vet.App. 370, 382 (2006) (quoting *E. Paralyzed Veterans Assoc., Inc.*, 257 F.3d at 1358-59; citing *Cleveland Bd. of Educ.*, 470 U.S. at 542-46), *aff'd sub nom. Prickett v. Mansfield*, 257 F. App'x 288 (Fed. Cir. 2007). We thus determine that, under the facts of this case, the Secretary satisfied the requirements of procedural due process.

Our due process holding here follows our previous decisions. In *Prickett*, the Court found that VA's failure to provide a copy of a medical examination report did not violate procedural due process. 20 Vet.App. at 382. The Court noted that, at every step in the adjudicatory process, Mrs. Prickett received notice of VA's actions and a chance to challenge those actions or provide additional evidence in support of her claim. *Id.* At a VA hearing, an officer repeatedly informed Mrs. Prickett of the need to submit missing medical evidence and offered her the opportunity to submit additional evidence. *Id.* at 373. After VA procured a medical examination on Mrs. Prickett's behalf, VA informed her through an SSOC that the examination was unfavorable and gave her the chance to respond. *Id.* at 374. When Mrs. Prickett appealed the matter to the Board, she received a hearing in which she again had a chance to provide additional evidence and argument. Later, she once more received notice of the opportunity to submit additional evidence and argument within 90 days. *Id.* After considering her claim, the Court explained that, because she was provided notice, a meaningful opportunity to develop her claim, and several chances to challenge VA's adverse determination, there was no violation of procedural due process. *Id.* at 382; *see Prickett*, 257 F. App'x at 293 (affirming this Court's *Prickett* decision and noting that the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) "perceive[d] full compliance with applicable due process and notification requirements"). Mr. Martinez's case calls for the same result.

### C. No Prejudicial Error

In addition to the above determinations, we affirm the Board's decision because Mr. Martinez has not demonstrated prejudice. Harmless error analysis applies to our review of Board decisions, and the appellant bears the burden of demonstrating prejudicial error on appeal. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error). Remand is not warranted when the appellant does not explain, and the Court cannot otherwise discern, how an error could have made a difference in the outcome of the case below. *Id.*; *see Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006) (any error depriving a claimant of "a meaningful opportunity to participate effectively in the processing of his or her claim . . . . must be considered prejudicial").

Here, Mr. Martinez, who does not contend that the 2016 VA examination is inadequate, fails to show that he was prejudiced by VA's failure to provide him with a full copy of the

12

examination. He does not articulate how or why the outcome of his case would have been different but for the alleged error. Although he argues that a harmless error analysis does not apply here, because the "right of access to government evidence . . . is so basic [that] its violation can never be treated as harmless error," Appellant's Br. at 9, the Federal Circuit has specifically determined that a harmless error analysis is applicable to a veteran's allegation of a due process violation, *Gambill v. Shinseki*, 576 F.3d 1307, 1311 (Fed. Cir. 2009).

Additionally, review of the record fails to show how the veteran could have been prejudiced by VA's failure to send him a copy of the 2016 medical examination. *See Mlechick v. Mansfield*, 503 F.3d 1340, 1345 (Fed. Cir. 2007) (holding that this Court's statutory duty to take due account of the rule of prejudicial error permits the Court "to go outside of the facts as found by the Board to determine whether an error was prejudicial by reviewing 'the record of the proceedings before the Secretary and the Board'" (quoting *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007))); *Vogan v. Shinseki*, 24 Vet.App. 159, 164 (2010) ("[I]n assessing the prejudicial effect of any error of law or fact, the Court is not confined to the findings of the Board but may examine the entire record before the Agency, which includes the record of proceedings."). Overall, the record shows that the 2016 SSOC provided Mr. Martinez with detailed notice of the 2016 examiner's conclusions and informed him that the examination supported a denial of benefits because the medical literature shows no link between sleep apnea and PTSD. Mr. Martinez was afforded several opportunities to respond to the SSOC and the evidence noted therein. Despite being represented and charged with the knowledge of how to obtain a copy of the medical examination report, the veteran did not request a copy at any time. He did, however, submit a written brief to the Board in which he argued that the medical literature does show a connection between sleep apnea and PTSD. We observe that Mr. Martinez's argument to the Board directly responds to the basis for the 2016 examiner's unfavorable opinion.[9]

The Court cannot discern from the arguments or the record on appeal how the Board's alleged error could have influenced the outcome of this case. *See Sanders*, 556 U.S. at 409. Nor do we see how any such error affected the appellant's ability to meaningfully and effectively

---

[9] The Court notes that, at oral argument, Mr. Martinez's current counsel indicated that neither Mr. Martinez nor his former counsel received the May 2016 SSOC. This assertion was not raised in the briefs and the Court declines to address it further. *See Sellers v. Wilkie*, 30 Vet.App. 157, 166 (2018) ("The Court generally will not entertain arguments raised by counsel at oral argument for the first time." (citing *McFarlin v. Conseco Servs., L.L.C.*, 381 F.3d 1251, 1263 (11th Cir. 2004); *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1332-33 (Fed. Cir. 2001); *Tarpley v. Greene*, 684 F.2d 1, 7 n.17 (D.C. Cir. 1982)); *see also Pederson*, 27 Vet.App. at 283.

participate in the adjudication of his claim. *See Overton*, 20 Vet.App. at 435. We therefore find no prejudicial error in the Secretary's failure to automatically send Mr. Martinez a full copy of the 2016 VA medical examination report.

## III. CONCLUSION

Accordingly, the Board's January 27, 2017, decision is AFFIRMED.